William Dale REDWINE, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–08–00731–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 28, 2010.

---

Austin R. Jackson, Tyler, for appellant.

Michael J. West, Tyler, for appellee.

Panel consists of Chief Justice HEDGES, and Justices YATES and SULLIVAN.

## OPINION

KENT C. SULLIVAN, Justice.

Appellant, William Dale Redwine, was convicted of evading arrest using a vehicle, a third-degree felony.[1] However, the evidence is legally insufficient to prove appellant, while operating his vehicle, knew peace officers were attempting to arrest or detain him, an essential element of the offense. Therefore, we must reverse the conviction and render a judgment of acquittal.

### I.

### BACKGROUND

On April 14, 2007, appellant was driving his pickup truck on County Road 26, a rural asphalt road in Smith County that has no lane dividers or medians, when he encountered a Smith County Sheriff's Office patrol car driving in the opposite direction. Appellant continued down the county road and then turned onto a dirt driveway in an admitted effort to "avoid contact" with the deputies because his license had been suspended.

Meanwhile, the deputies, Thomas Hudson and John Shoemaker, had decided to turn around and pursue appellant's truck for allegedly driving too near the center of the undivided road. From a distance, they followed appellant's truck along the county road and then onto the dirt driveway. According to Officer Hudson, they opted not to deploy their vehicle's emergency lights and siren for fear that appellant might discover their pursuit and take steps to elude them. Stated differently, he testified they attempted to conceal their intent to detain appellant, and "never had a

---

1. The offense of evading arrest, usually a Class A misdemeanor, is punishable as a third-degree felony if the actor uses a vehicle while in flight and, like appellant, has been previously convicted of the same offense. *See* Tex. Penal Code Ann. § 38.04(b), (b)(2)(A) (Vernon 2003 & Supp. 2009).

chance" to activate their overhead lights. On that point, the State later conceded the deputies did not utilize any emergency signals at any time during the pursuit.

The deputies found appellant's truck unoccupied at the end of the dirt driveway. They exited their patrol car and demanded appellant yield by shouting, "Sheriff!" After some time, appellant, who had run into the forest, returned on foot to his truck where he was arrested.

For reasons that are unclear, the State indicted appellant solely for evading arrest *using a vehicle.* After a jury trial, appellant was convicted of the charged offense and sentenced to ten years' imprisonment.[2]

Appellant timely appealed, bringing three issues. In his first two issues, appellant challenges the legal and factual sufficiency of the evidence supporting his conviction. In his third issue, appellant contends the trial court erred by refusing to submit the lesser-included offense of evading arrest on foot. Because we sustain his legal-sufficiency challenge, we need not address his remaining issues.

## II.

### ANALYSIS

■ Appellant was specifically charged with evading arrest using a vehicle, a third-degree felony. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A) (Vernon 2003 & Supp. 2009). To convict him of the

charged offense, the State had to prove appellant, while using a vehicle, intentionally fled from a person he knew to be a peace officer attempting lawfully to arrest or detain him. *See id.* §§ 38.04(a), 38.04(b)(2)(A).[3] This statute, which imposes varying degrees of criminal punishment commensurate with the public danger posed by the evasive conduct,[4] supports an important public policy encouraging suspects to yield to a show of authority by law enforcement. *See Smith v. State,* 739 S.W.2d 848, 850 (Tex.Crim.App.1987); *Farrakhan v. State,* 263 S.W.3d 124, 143–44 (Tex.App.-Houston [1st Dist.] 2006), *aff'd,* 247 S.W.3d 720 (Tex.Crim.App.2008); *Johnson v. State,* 864 S.W.2d 708, 722–23 (Tex.App.-Dallas 1993), *aff'd,* 912 S.W.2d 227 (Tex.Crim.App.1995).

■ A person commits a crime under Section 38.04 only if he knows a police officer is attempting to arrest him but nevertheless refuses to yield to a police show of authority. *See Brooks v. State,* 76 S.W.3d 426, 434 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Hobyl v. State,* 152 S.W.3d 624, 627 (Tex.App.-Houston [1st Dist.] 2004) ("[T]he accused must *know* that the person from whom he flees is a peace officer attempting to arrest or detain him."), *pet. dism'd, improvidently granted,* 193 S.W.3d 903 (Tex.Crim.App. 2006). Here, whether the evidence proves

---

**2.** Appellant was later sentenced to an additional five years' imprisonment for jumping bail. *See* Tex. Penal Code Ann. § 38.10 (Vernon 2003). This court has affirmed that conviction. *See Redwine v. State,* No. 14–08–00730–CR, 2009 WL 2004358, at *1 (Tex. App.-Houston [14th Dist.] July 9, 2009, no pet.) (mem. op., not designated for publication).

**3.** "An offense under this section is . . . a felony of the third degree if . . . the actor uses a vehicle while the actor is in flight and the

actor has been previously convicted under this section[.]" Tex. Penal Code Ann. § 38.04(b)(2)(A). Appellant stipulated to a previous conviction for evading arrest. *See id.*

**4.** *See id.* § 38.04(b) (providing for punishments ranging from those associated with a Class B misdemeanor, for ordinary evasion on foot, to second-degree felony, if the attempt to apprehend a suspect results in another's death).

appellant's requisite knowledge is the primary dispute between the parties.

Appellant contends the police made no show of authority until after he had already exited his vehicle. He therefore argues the evidence is legally insufficient to prove he knew, *while in his vehicle*, that police were attempting to arrest or detain him. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A) (requiring State to prove the defendant used a vehicle *while* in flight).

The State, in response, does not dispute appellant's claim that the deputies made no show of authority while appellant was in his vehicle. In fact, notwithstanding some equivocal testimony from Officer Shoemaker, the State *concedes* the deputies did not activate their vehicle's overhead lights or otherwise demand appellant's surrender until after he had exited his truck. Instead, the State contends the jury could *infer* appellant's knowledge of police pursuit from a written statement in which appellant acknowledged he turned off the main road "to avoid contact" with the officers he had passed earlier. We will address both pieces of evidence—the written statement and Officer Shoemaker's comments—after an examination of the appropriate standard of review.

### A. Standard of Review

The Texas Court of Criminal Appeals recently revisited the legal-sufficiency standard of review in *Laster v. State*, 275 S.W.3d 512 (Tex.Crim.App.2009). Citing *Jackson v. Virginia*,[5] the Court observed "the United States Constitution requires that a criminal conviction be supported by a rational trier of fact's findings that the

accused is guilty of every essential element of a crime beyond a reasonable doubt." *Id.* at 517; *Clewis v. State*, 922 S.W.2d 126, 132 (Tex.Crim.App.1996) (noting *Jackson* sets "the *minimum* standard for sustaining a conviction under the Due Process Clause of the Fourteenth Amendment"). Thus, although we give proper deference to the factfinder's role, we are to safeguard against "the rare occurrence when a factfinder does not act rationally." *Laster*, 275 S.W.3d at 517–18. We discharge this responsibility by properly applying the legal-sufficiency standard of review to consider the evidence supporting a criminal conviction. *See id.* at 517.

Notably, we cannot simply apply a "no evidence" standard of review[6] to a legal-sufficiency challenge because that standard affords "inadequate protection against potential misapplication of the reasonable-doubt standard." *Gollihar v. State*, 46 S.W.3d 243, 246 n. 4 (Tex.Crim. App.2001). "Adherence to the no evidence standard is now, and has been for the last decade, expressly forbidden by *Jackson.* It is no longer permissible to merely quote the *Jackson* standard and then to turn around and apply the ... no evidence standard as we have historically done." *Butler v. State*, 769 S.W.2d 234, 239 (Tex. Crim.App.1989) (en banc), *overruled on other grounds by Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). Instead, we are to view the evidence in the light most favorable to the verdict and then determine whether "any rational trier of fact could have found the essential elements of the crime *beyond a reasonable doubt.*" *Id.* at 239 (emphasis added), *cited in Canales v. State*, 98 S.W.3d 690, 693

---

**5.** 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**6.** Under a "no evidence" standard, a reviewing court would affirm the judgment if *any* evidence supported the conviction. *See Golli-*

*har v. State*, 46 S.W.3d 243, 246 n. 3 (Tex. Crim.App.2001) (citing *Thompson v. Louisville*, 362 U.S. 199, 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960)).

(Tex.Crim.App.2003). Accordingly, we will uphold the jury's verdict unless a rational factfinder must have had a reasonable doubt as to any essential element. *See Laster,* 275 S.W.3d at 518.

### B. Appellant's Written Statement

We begin with appellant's written statement, the only evidence cited by the State in support of the verdict. On the night he was arrested, appellant provided the following statement:

> On 4–14–07 we was driving to 4 Corners and contacted Smith Co. Patrol—turned off of road to avoid contact. Driving gold chevy pickup. I came back to the truck and was arrested. I did go into the woods on foot away from deputies. Was driving East on C.R. 26 and turned towards Mr. Harris. Bill went through the woods on foot. I don't drive because of suspended D.L. That's why I didn't want to be in contact with deputies.

The State construes this statement as a confession that appellant knew the deputies he had passed were attempting to arrest or detain him. We disagree.

"The gravamen of the offense is the evasion of an *arrest,* not the evasion of a police officer." *Jackson v. State,* 718 S.W.2d 724, 726 (Tex.Crim.App.1986) (emphasis added) (citation omitted). Accordingly, we cannot fairly read appellant's professed desire simply to *avoid further contact* with deputies seen on the road as a concession that he knew they were actually trying to arrest or detain him. *See id.* Instead, appellant's statement reflects only that he had seen the deputies and hoped not to do so again. It does not, however, prove he had notice of their admittedly concealed intention to arrest or detain him. Therefore, appellant's statement does not prove the degree of knowledge necessary to constitute an offense under Section 38.04. *See Brooks,* 76 S.W.3d at 434; *Hobyl,* 152 S.W.3d at 627.

### C. Officer Shoemaker's Testimony

Appellant's written statement is the only evidence cited by the State in support of the judgment. However, under the legal-sufficiency standard of review, we must examine *all* of the evidence adduced at trial. *See Clewis,* 922 S.W.2d at 132 n. 10; *Chambers v. State,* 805 S.W.2d 459, 460 (Tex.Crim.App.1991). Therefore, although the State does not highlight or even discuss Officer Shoemaker's testimony about their vehicle's emergency lights, we are nevertheless required to include his comments in our review. *See Chambers,* 805 S.W.2d at 460.

During direct examination, Officer Shoemaker was asked whether he activated the emergency lights during their pursuit of appellant's truck. He replied, "To my recollection, I believe I hit my overhead lights as I turned on the drive. I am not for sure on that, but I believe I did, yes, sir." However, on cross-examination, after consulting his partner's written report, which omitted any mention of the emergency lights, he consistently admitted he did not have "any recollection" whether the overhead lights in fact had been activated:

> Q. [D]eputy Hudson didn't mention anything about turning on the lights either, did he, in that report?
>
> A. No, ma'am, I don't believe he did.
>
> Q. And that's an important factor in this case, is it not?
>
> A. Yes, ma'am, I guess it can be.
>
> Q. I mean, this is an evading case. It's important to know if someone is running from law enforcement; and part of that would be overhead lights on a car, fair to say?
>
> A. Yes, ma'am.
>
> . . . .

Q. [W]hen you make a stop and turn your lights on, do you keep those lights on throughout the longevity of the stop?

A. Yes, ma'am, I do.

Q. So if your lights were on in this particular case, the lights would be on through the longevity of the stop, fair to say?

A. Yes, ma'am.

Q. *Is it fair to say we don't have any recollection of exactly whether or not the lights were on in this case?* [7]

A. Yes, ma'am.

Finally, on redirect, Officer Shoemaker testified:

Q. Deputy, maybe you had the lights on, maybe you didn't, *you just don't know?* [8]

A. Yes.

Notably, the remaining evidence admitted during trial overwhelmingly indicates the deputies did not activate their vehicle's overhead lights before appellant exited his truck and fled on foot. For example, Officer Hudson testified the deputies chose not to activate the emergency lights because they hoped to *conceal* their intent to detain appellant:

If we—you turn on your lights too soon—if they have a great distance ahead of you and then you turn on your lights, you are alerting them already that—we are not going to be able to get them stopped. They're going to be too far ahead. So we try to get up closer to where we can hit our lights before they, for lack of a better word, gun it.

He confirmed, then, "we never had a chance to get up on [appellant] to activate our lights." That testimony would explain the admitted lack of a dashboard video [9] documenting the pursuit, because, according to Officer Hudson's uncontroverted testimony, the videocamera automatically turns on and begins recording when the emergency lights are activated. Finally, his written report from the incident, prepared shortly thereafter, does not mention the overhead lights.

To its credit, the State candidly acknowledged, in both its opening statement and closing argument, that the deputies did not utilize their emergency lights. During opening, the prosecutor advised the jury, "[T]hey didn't turn on their lights because they weren't quite close enough. And that would explain why there won't be a video, because when they hit their lights the video comes on." Then, during closing argument, the State repeated the concession: "And the only reason those lights were never hit was because he had gotten so far ahead of them and almost escaped them." [10]

The State's concessions, apparently prompted by the overwhelming evidence, highlight a troubling aspect of the manner in which *Jackson v. Virginia* has historically been applied in Texas. *Jackson* instructs courts to decide whether a rational trier of fact could have found all of the essential elements of the offense beyond a reasonable doubt, "viewing the evidence in the light most favorable to the prosecution." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. That standard, however, has received somewhat unique treatment in Tex-

---

7. Emphasis added.

8. Emphasis added.

9. Officer Hudson testified, "[The][v]ideo did not come on because we didn't have our lights on, so they didn't come on."

10. Appellant does not contend the prosecutor's remarks represent a judicial admission by the State. *See Reed v. State,* 14 S.W.3d 438, 440 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *Velez v. State,* 240 S.W.3d 261, 265 (Tex.App.-Houston [1st Dist.] 2007, pet. ref'd); *Davidson v. State,* 737 S.W.2d 942, 948 (Tex. App.-Amarillo 1987, pet. ref'd).

as,[11] where it has been interpreted as requiring reviewing courts to *disregard* all evidence not supporting the verdict.[12] *See Clewis*, 922 S.W.2d at 132 n. 10. Further, because a jury may choose to believe some portions of a witness's testimony and disbelieve others,[13] we must seemingly confine our analysis to Officer Shoemaker's initial remarks during direct examination:

> Q. Now, during this time, *to your recollection*, you were—did you hit your overhead lights, *to your recollection?*
>
> A. *To my recollection*, I *believe* I hit my overhead lights as I turned on the

drive. *I am not for sure on that*, but I believe I did, yes, sir.[14]

Stated differently, we must decide whether any rational trier of fact, considering only this equivocal testimony, could have found appellant guilty beyond a reasonable doubt. *See Clewis*, 922 S.W.2d at 132; *Butler*, 769 S.W.2d at 239.

In resolving this issue, we find guidance in well-rooted authority reviewing the evidentiary sufficiency of a witness's in-court identification of a criminal defendant.[15] In that context, courts have consistently held that an "uncertain in-court identification of

---

**11.** Our research uncovered only a handful of other jurisdictions that disregard evidence favorable to the defendant in a legal-sufficiency review. *See Massachusetts v. Caparella*, 70 Mass.App.Ct. 506, 874 N.E.2d 682, 687 (2007); *Moore v. Mississippi*, 996 So.2d 756, 760 (Miss.2008); *Missouri v. White*, 798 S.W.2d 694, 697 (Mo.1990).

**12.** One might argue that, by focusing only on favorable evidence and disregarding *all* evidence contrary to the verdict, the reviewing court effectively ignores *Jackson* and *Butler* by simply applying a test that looks for *some* evidence supporting the verdict. *See Butler*, 769 S.W.2d at 239 (likening the "any evidence" test to a no-evidence rule that "differs not at all from" the *Thompson* standard abandoned in *Jackson*). However, the United States Constitution requires us to subject evidence to review using a magnifying glass that *incorporates* the reasonable-doubt burden of proof. *See Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781; *Laster*, 275 S.W.3d at 517; *Butler*, 769 S.W.2d at 239. That is, as the Texas Supreme Court has noted:

> Beginning with the United States Supreme Court's opinion in *Jackson v. Virginia*, appellate courts have recognized that, while "one slender bit of evidence" may be all a reviewing court needs to affirm a verdict based on the preponderance of the evidence, a higher burden of proof requires a higher standard of review.... [T]he standard for legal sufficiency *works in tandem with the standard of review*—"whenever the standard of proof at trial is elevated, the standard of appellate review must likewise be elevated." If the rule were otherwise, legally sufficient evidence to support a pre-

ponderance-of-the-evidence verdict would satisfy the higher burdens as well, thus rendering their differences meaningless.

*City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex.2005) (citations omitted) (emphasis added). Thus, disregarding all contrary evidence, no matter how mountainous or compelling it may be, appears incongruous with the reviewing court's task of deciding whether a rational factfinder could have found a defendant guilty *beyond a reasonable doubt* given that it is the evidence *contrary to* the verdict that commonly injects the element of "reasonable doubt" into the jury's deliberations.

Nevertheless, in this case, appellant does not challenge the constitutionality of the "consider-and-disregard" component of the legal-sufficiency standard of review. *See Pena v. State*, 191 S.W.3d 133, 137–38 (Tex.Crim. App.2006) (cautioning appellate courts against deciding constitutional issues *sua sponte*). Moreover, we need not address this issue here because, even while we set aside all of the copious evidence contrary to the verdict, we still find the remaining evidence legally insufficient to support the judgment of conviction.

**13.** *See Esquivel v. State*, 506 S.W.2d 613, 615 (Tex.Crim.App.1974); *Bargas v. State*, 252 S.W.3d 876, 887 (Tex.App.-Houston [14th Dist.] 2008, no pet.).

**14.** Emphasis added.

**15.** While we have not located any authority applying the equivocal-identification rule to proof of other essential elements of an of-

an accused as the perpetrator of a crime, standing alone, is insufficient to support a guilty verdict." *Anderson v. State*, 813 S.W.2d 177, 179 (Tex.App.-Dallas 1991, no pet.), *cited in Swartz v. State*, 61 S.W.3d 781, 788 (Tex.App.-Corpus Christi 2001, pet. ref'd); *Bickems v. State*, 708 S.W.2d 541, 543 (Tex.App.-Dallas 1986, no pet.); *Ates v. State*, 644 S.W.2d 843, 844–45 (Tex. App.-Tyler 1982, no pet.); *United States v. Hawkins*, 658 F.2d 279, 289 (5th Cir.1981); *United States v. Murray*, 527 F.2d 401, 410 (5th Cir.1976); *United States v. Musquiz*, 445 F.2d 963, 965–66 (5th Cir.1971).[16] As the Fifth Circuit has explained:

> Questions of identification are, of course, ordinarily for the determination of the jury. If, however, as in this case, the sole witness is unsure and there are no other connecting or corroborating facts or circumstances the jury is left without evidence upon which to translate unrelieved uncertainty into belief from the evidence beyond a reasonable doubt.

*Murray*, 527 F.2d at 410 (citation omitted).

If an equivocal identification can be coupled with other corroborating evidence, the conviction still may be affirmed. *See Anderson*, 813 S.W.2d at 179; *Hawkins*, 658 F.2d at 289. Here, however, Officer Shoemaker's hesitant testimony is the *only* evidence suggesting appellant, while in his vehicle, failed to yield to a *possible* show of authority by law enforcement.[17] *See Brooks*, 76 S.W.3d at 434; *Hobyl*, 152 S.W.3d at 627. Moreover, on that critical fact, the witness was unsure of his testimony and, given time to reflect, admitted he had no recollection and simply did not know whether the lights were activated. In effect, the witness acknowledged in his own testimony that *he* had a greater-than-reasonable doubt as to the essential facts. This kind of uncertain testimony, had it been offered to establish the appellant's identity, would be legally insufficient, standing alone, to prove guilt beyond a reasonable doubt:

> In the instant case we have one witness who testified that she could not identify the appellant, and a second who identified him in one breath, but stated in the next breath that the man who allegedly passed him the counterfeit bills had a

---

fense, we see no compelling reason for treating the two differently. Naturally, misidentification entails an "awful risk" of convicting the wrong person of a crime. *See United States v. Marchand*, 564 F.2d 983, 985 (2d Cir.1977). However, neither should a reviewing court permit proof of an *essential element* of the offense only by testimony that is admittedly uncertain. That scenario poses the unacceptable, and equally grave, possibility of wrongly convicting a person who may have committed no crime at all.

**16.** *See also Marchand*, 564 F.2d at 986 ("[A] jury is free, on the basis of a witness' demeanor, to 'assume the truth of what he denies' *although a court cannot allow a civil action, much less a criminal prosecution, to go to the jury on the basis of this alone.*") (emphasis added) (quoting *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir.1952)).

**17.** Indeed, the absence of corroborating evidence distinguishes this case from the examples discussed in *Goodman v. State*, 66 S.W.3d

283 (Tex.Crim.App.2001). There, Judge Cochran posed a series of hypothetical situations involving a modern-day Cretan Liar, with five previous perjury convictions, testifying for the prosecution against a defendant charged with possession of cocaine. *See id.* at 285–86. In one of those examples, the Cretan Liar testifies that, although he is almost blind, he is "pretty sure" he saw the defendant place a baggie of cocaine on the sidewalk. *See id.* at 286 n. 4. According to the Court, a rational trier of fact could believe the Cretan Liar's testimony despite his poor eyesight and equivocal testimony. *See id.* However, unlike here, the Cretan Liar's testimony is bolstered by corroborating evidence that the baggie of cocaine was found only two feet away from the defendant with no one else in sight, "support[ing]" an inference that the cocaine belongs to defendant." *Id.* at 285 (emphasis removed). Here, there is no such corroborating evidence.

bump on his head, which "bump" was absent from the appellant's head. In the absence of other evidence to corroborate Mrs. Sanchez' nonidentification, and Mr. Cancino's rather ambivalent identification, we are doubtful that there was sufficient evidence upon which to base a finding of guilty beyond a reasonable doubt.

*Musquiz,* 445 F.2d at 965–66; *see also Bickems,* 708 S.W.2d at 542–43 (concluding in-court identification to be insufficient, standing alone, after witness initially testified he "was sure appellant was the individual who robbed him" but later indicated he was "not that positive" about the perpetrator's identity); *Ates,* 644 S.W.2d at 844–45 (reversing conviction because victim's "strongest testimony" consisted merely of uncertain statements like "I guess this is her" and "This look[s] like her") (citing *Phillips v. State,* 164 Tex.Crim. 78, 297 S.W.2d 134, 135 (1957)).

Here, in the absence of other evidence, the jury could not translate Officer Shoemaker's uncertainty into belief beyond a reasonable doubt. *See Murray,* 527 F.2d at 410. Therefore, properly applying the legal-sufficiency standard of review, we hold no rational trier of fact could have found appellant guilty beyond a reasonable doubt of evading arrest *using a vehicle,* the only offense listed in the indictment.[18] *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Butler,* 769 S.W.2d at 239. We sustain appellant's first issue. Having done so, we need not reach appellant's remaining issues.

### III.

### CONCLUSION

The State did not carry its burden of proving beyond a reasonable doubt that

appellant, while in his vehicle, knew deputies were attempting to arrest or detain him, an essential element of the charged offense. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A). Therefore, we hold the jury's verdict is not supported by legally sufficient evidence under the standard of review announced in *Jackson v. Virginia* and adopted by the Texas Court of Criminal Appeals. *See Butler,* 769 S.W.2d at 239. Accordingly, we must reverse the judgment and render a judgment of acquittal on the charge of evasion of arrest using a vehicle. *See Clewis,* 922 S.W.2d at 133.

---

18. Because the issue is not before us, we need not decide whether the evidence would support a conviction for the lesser offense of evasion on foot. *See* Tex. Penal Code Ann. § 38.04(a).