**Affirmed and Memorandum Opinion filed February 20, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00288-CR

## KENYATTA WESLEY FREDERICK, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 413th Judicial District
Johnson County, Texas[1]
Trial Court Cause No. F46217**

## M E M O R A N D U M   O P I N I O N

Appellant Kenyatta Wesley Frederick was convicted by a jury of evading arrest with a vehicle. On appeal, he argues the evidence is legally insufficient to

---

[1] This case was transferred to the Fourteenth Court of Appeals from the Tenth Court of Appeals in Waco; we apply transferor court's precedents if there is a conflict. Tex. R. App. P. 41.3. There is no conflict between the Fourteenth Court of Appeals and the Tenth Court of Appeals on the dispositive legal issues in this case.

support the conviction and the jury's finding that appellant used or exhibited a deadly weapon in the commission of the offense. We conclude the evidence is sufficient to support the conviction and the deadly weapon finding and, therefore, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Officer Damian Bethell is a Deputy Sheriff with the Johnson County Sheriff's Office. He has training and experience in drug recognition including training from the Drug Enforcement Administration (DEA) on the manufacture of methamphetamine. At approximately 4:00 in the morning, Bethell was patrolling near Interstate 35 when he noticed a Blue Crown Victoria with an obstructed license plate. The paper dealer tag was flopping up and down so that Bethell could not read it. Bethell activated his emergency lights and siren, and initiated a traffic stop. Bethell approached the driver and obtained identification that identified the driver as appellant. Carrying appellant's identification card and his permanent license plates, Bethell walked back toward his patrol car to run the license plate number through the computer system. As he walked away, Bethell saw a clear plastic baggie on the "little hump right behind the back seat right before the seat and the main — the driver and the passenger seat." Bethell testified that the clear plastic baggie appeared to contain methamphetamine. Bethell immediately placed the things he was carrying on the trunk of appellant's car and called for backup. Because his radio was not working properly, and he thought it might be approximately 45 minutes before backup arrived, Bethell decided to conduct a solo arrest of appellant for possession of a controlled substance.

Bethell walked toward appellant's car with his service weapon drawn and loudly requested that appellant get out of the car. Bethell asked three times, but appellant refused to get out of the car. After the third request, appellant looked at

2

Bethell and drove away at an accelerated speed, with the car's headlights off. Bethell ran to his patrol car and pursued appellant. Driving at approximately 115 miles per hour, Bethell was unable to catch up to appellant whose speed Bethell estimated to be between 120 and 130 miles per hour. Bethell observed appellant exit Interstate 35 and drive over 120 miles per hour on the service road. He also observed appellant run through a red light at an intersection, and attempted to pursue, but lost sight of appellant. Bethell testified that he did not maintain a speed of over 100 miles per hour on the service road because there were intersecting county roads, which created a risk that another driver could enter the service road with no warning. The jury was shown the video from Bethell's patrol car, which corroborated his testimony.

Officer Charles Garrett of the Burleson Police Department was one of the patrol officers dispatched to help apprehend appellant during the high speed chase. Garrett observed the car traveling in the center of Interstate 35 with no headlights. Garrett pursued appellant, but could not catch up to his car.

Several days later, appellant was arrested while sleeping in his car at his mother's home. The jury found appellant guilty of the offense of evading arrest with a vehicle as alleged in the indictment.

## II. ANALYSIS

Appellant contends that the evidence is legally insufficient to establish that the arrest was lawful and appellant knew the peace officer was attempting to arrest him.

Section 38.04 of the Texas Penal Code establishes the elements of the offense of evading arrest or detention: "A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special

3

investigator attempting to arrest or detain him." Tex. Penal Code § 38.04(a). The offense is a third degree felony if "the actor uses a vehicle while the actor is in flight." Tex. Penal Code § 38.04(b)(2). Thus, to convict appellant of the charged offense, "the State had to prove appellant, while using a vehicle, intentionally fled from a person he knew to be a peace officer attempting lawfully to arrest or detain him." *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). A person violates Section 38.04 "only if he knows a police officer is attempting to arrest him but nevertheless refuses to yield to a police show of authority." *Id.*

In evaluating the legal sufficiency of the evidence, we must view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because the factfinder views the evidence first-hand, the factfinder is in the best position to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from the evidence. *See id.*; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) ("[U]nlike the factfinder—who can observe facial expressions and hear voice inflections first-hand—an appellate court is limited to the cold record."). We presume that the factfinder resolved any conflicts in favor of the verdict and must defer to that resolution, as long as it is rational. *Jackson*, 443 U.S. at 326. "After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster*, 275 S.W.3d at 518.

## A.    The evidence is legally sufficient to support that the arrest was lawful.

Appellant first argues Bethell did not have sufficient probable cause to arrest him. Appellant does not challenge the validity of the traffic stop. Appellant argues

Bethell's observation of the clear plastic baggie containing what he believed to be methamphetamine was not sufficient evidence to associate appellant with criminal activity and establish probable cause.

A police officer may arrest an individual without a warrant if (1) there is probable cause with respect to that individual and (2) the arrest falls within one of the statutory exceptions. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002). One of those exceptions provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Tex. Code Crim. Proc. art. 14.01(b).

The "plain view" doctrine requires that (1) law enforcement officials must lawfully be where the object can be "plainly viewed"; (2) the "incriminating character" of the object in plain view must be "immediately apparent" to the officials; and (3) the officials must have the right to access the object. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). In this case, appellant challenges the second prong, whether the incriminating character of the object was immediately apparent to Bethell. The second prong, the immediacy requirement, requires only a showing of probable cause that the item discovered is incriminating evidence; actual knowledge of the incriminating evidence is not required. *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991). Probable cause exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband will be found. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). An officer may rely on training and experience to draw inferences and make deductions as to the nature of the item seen. *Nichols v. State*, 886 S.W.2d 324, 325–26 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *Johnson v. State*, 720 S.W.2d 239, 240 (Tex. App.—Houston [14th Dist.] 1986, no pet.).

When Bethell conducted the traffic stop and approached the car while investigating the traffic violation, he was legally in a position to see, in plain view, the clear plastic baggie between the front and back seats of the car. The clear plastic baggie contained what Bethell believed to be methamphetamine. Bethell testified that he received training from the DEA in the recognition of narcotics including training in the manufacture of methamphetamine. Because Bethell saw what his training caused him to believe was methamphetamine in plain view, he had probable cause to believe appellant committed an offense within his view. *See* Tex. Code Crim. Proc. art. 14.01(b).

**B.     The evidence is legally sufficient to support that appellant knew the peace officer was attempting to arrest him.**

Appellant further argues the evidence was insufficient to show that appellant knew Bethell was attempting to arrest him. A person commits a crime under Section 38.04 only if he knows a police officer is attempting to arrest him, but nevertheless refuses to yield to a police show of authority. *See Redwine* 305 S.W.3d at 362.

In this case, appellant contends he was initially detained during a traffic stop and complied with the officer's command up to the point at which the officer pulled his service weapon and ordered appellant to get out of the car. Appellant cites *Griego v. State*, 345 S.W.3d 742 (Tex. App.—Amarillo 2011, no pet.), and *Redwine v. State*, 305 S.W.3d at 360, in support of his argument that he was unaware the officer was attempting to arrest him. The facts presented in each of these cases are distinguishable from the facts of this case.

In *Griego*, two officers were on their way to a house with their lights and sirens activated in response to a report of illegal activity when the officers met the defendant traveling the opposite direction in a vehicle matching the suspect's car.

6

345 S.W.3d at 746. The officers turned around at a bend in the road and followed the defendant for approximately 17 seconds to a residential driveway. *Id.* at 747–48. As the officers pulled up to the residence, the defendant got out of the car, and walked toward the residence, at which time the officers ordered him to stop. *Id.* at 747. When the defendant did not comply, an officer used a taser to subdue him. *Id.* The court in *Griego* concluded that the evidence was not sufficient to show the defendant knew before getting out of his car that the officers were attempting to arrest him. *Id.* at 752–53. However, the court concluded that the defendant knew or should have known that officers were trying to arrest him after they ordered him to stop. *Id.* at 755.

In *Redwine*, the defendant was driving on a rural road when he encountered a patrol car driving in the opposite direction. 305 S.W.3d at 361. The officers in the patrol car decided to turn around and pursue the defendant for driving too near the center of the road, but the officers never activated their emergency lights and siren. *Id.* The officers followed the defendant's vehicle onto a dirt driveway where they found the vehicle unoccupied. *Id.* at 362. They exited the patrol car and shouted, "Sheriff!" *Id.* The defendant eventually returned on foot to his vehicle where he was arrested. *Id.* The defendant was convicted of evading arrest using a vehicle, and this court concluded the evidence was legally insufficient to support the conviction because there was no evidence that appellant evaded arrest while he was in his vehicle. *Id.* at 362, 368.

By contrast, in this case, appellant complied when Bethell initiated the traffic stop. Bethell used his lights and sirens and was wearing a deputy sheriff's uniform. When Bethell saw the suspected methamphetamine, drew his weapon, and shouted three times for appellant to get out of the car, appellant sped away at a high rate of speed. When appellant drove away, Bethell continued to pursue him

with lights and sirens. Also, Garrett testified he used his emergency lights when he attempted to pursue appellant. Appellant did not stop his vehicle while being pursued by officers using emergency lights and sirens.

We therefore conclude, viewing the evidence in the light most favorable to the verdict, and drawing reasonable inferences therefrom, a rational jury could have determined beyond a reasonable doubt that appellant knew a peace officer was attempting to arrest him. *See Jackson*, 443 U.S. at 319. We overrule appellant's first issue.

## C. The evidence is legally sufficient to support the jury's finding that appellant used or exhibited a deadly weapon in the commission of the offense.

In his second issue appellant argues the evidence is legally insufficient to support the jury's finding that appellant used or exhibited a deadly weapon during the offense.

A "deadly weapon" is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(B). The evidence must demonstrate that the deadly weapon was used or revealed "during the transaction from which" the felony conviction was obtained. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). There must be evidence that others were actually endangered to sustain a deadly weapon finding. *Id.* at 738.

An automobile can be a deadly weapon if it is used in a manner capable of causing death or serious bodily injury to others. *Tyra v. State*, 897 S.W.2d 796, 798–99 (Tex. Crim. App. 1995). Specific intent to use an automobile as a deadly weapon is not required. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). To determine whether an automobile was used as a deadly weapon, we (1) "evaluate the manner in which the defendant used the motor vehicle during the

8

felony;" and (2) "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009).

We first consider the manner in which appellant used his automobile. In doing so, we examine whether appellant's driving was reckless or dangerous. *Id*. Courts have considered several factors in examining whether a defendant's driving was reckless or dangerous: (1) intoxication, *Tyra*, 897 S.W.2d at 798–99; (2) speeding, *Drichas v. State*, 175 S.W.3d 795, 797 (Tex. Crim. App. 2005); (3) disregarding traffic signs and signals, *id*.; and (4) driving erratically, *id*; *Mann v. State*, 13 S.W.3d 89, 91–92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001).

In this case, the record reflects that appellant was speeding, driving between 120 and 130 miles per hour while on the freeway and the service road and turning his lights off and on. Bethell testified that he pursued appellant on the service road, which had several intersections from which an innocent bystander could emerge at any minute. While speeding on the service road, appellant ran through a red light. Bethell's testimony was corroborated by the in-car video viewed by the jury, which showed Bethell's pursuit speed at 115 miles per hour except when he was on the service road. The video also reflects other traffic on the freeway and the service road, which was endangered during the high-speed chase.

Viewing all of the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient to support the jury's finding that appellant used his car as a deadly weapon during the commission of the offense of evading detention with a motor vehicle. A reasonable jury could have found that appellant drove his car in a reckless or dangerous manner while fleeing the police. *See Jackson*, 443 U.S. at 319. We overrule appellant's second issue.

9

## III. CONCLUSION

Accordingly, we affirm the trial court's judgment.

/s/      Tracy Christopher
         Justice

Panel consists of Justices Boyce, Christopher, and Brown.
Do Not Publish — TEX. R. APP. P. 47.2(b).