NO. 07-09-00206-CR
 
 IN THE COURT OF APPEALS
 
 FOR THE SEVENTH DISTRICT OF TEXAS
 
 AT AMARILLO
 
 PANEL B
 
--------------------------------------------------------------------------------
JUNE 10, 2010
--------------------------------------------------------------------------------

 
 NICK LEE GRIEGO, APPELLANT
 
 v.
 
 THE STATE OF TEXAS, APPELLEE 
--------------------------------------------------------------------------------

 
 FROM THE 242ND DISTRICT COURT OF HALE COUNTY;
 
 NO. B17934-0902; HONORABLE EDWARD LEE SELF, JUDGE
--------------------------------------------------------------------------------

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 MEMORANDUM OPINION
 
 
A jury found appellant, Nick Lee Griego, guilty of the third-degree offense of evading arrest or detention using a vehicle and having been previously convicted of evading arrest or detention. It assessed punishment at ten years imprisonment.
 On appeal, appellant contends that the evidence is legally insufficient to support the conviction of a third-degree felony and, therefore, the jury's assessment of punishment within the third-degree felony range was not authorized. He also contends the evidence was factually insufficient to support the state-jail felony offense of evading arrest or detention using a vehicle. The State concedes error as to the legal sufficiency of the evidence to support a finding that appellant had been previously convicted of evading arrest or detention. But, the State maintains, the evidence was sufficient to support conviction for the state-jail felony of evading arrest or detention using a vehicle. It asks us to reform the judgment to reflect a conviction of the state-jail felony and to employ a harm analysis as to appellant's punishment issue.
 We do not reach the punishment issues raised, reverse the judgment of conviction for the third-degree felony, render a judgment of acquittal as to the third-degree felony, and remand the cause for a new trial.
 Factual Background
The Officers' Accounts
 The two pursuing officers, Hall and Erpelding, testified at trial. The two officers, in separate cars, both with their lights and sirens activated, were en route to 717 Milwee in response to a report of a man with a gun. Dispatch provided them the name of the suspect and a description of the suspect's vehicle. On their way to 717 Milwee, traveling southwest on El Barrio Road and then west on East Ninth Street, the officers encountered a vehicle traveling in the opposite direction and matching the description of the suspect's car. The officers and appellant passed on an approximately 135-degree bend at which point El Barrio Road, running southwest and northeast, becomes East Ninth Street, an east-to-west street. The officers each turned around on East Ninth Street, after the bend, headed back east on East Ninth Street and, then, in a northeasterly direction on El Barrio Road. By the time the officers turned around and negotiated the bend in the road, appellant had already turned left off El Barrio Road onto Davidson Street and was heading due north.
 The officers acknowledged that, after they turned around, appellant's vehicle was some distance ahead of them and had turned off El Barrio Road but testified that they were able to see appellant's car. Both officers also testified that they were not certain whether appellant saw them turn around and head back in the direction he was traveling. Erpelding testified that he did not know when or if appellant had seen the officers behind him on Davidson Street either. Hall conceded that it is possible that appellant would not have seen the officers turn around on East Ninth Street to travel in the direction he was going. But, Hall explained, most of the time people will pull over or keep watching where the patrol car is going. Hall did not know if appellant saw them turn around to pursue him before appellant turned onto Davidson Street; he was adamant, however, that appellant saw the cars as they met him on the bend traveling in the opposite direction.
 When the officers turned north onto Davidson Street, appellant had already signaled a right turn onto Nixon Street, going east. Erpelding testified that he came within a couple of car lengths of appellant's vehicle about one-half to one block before appellant turned right onto Nixon Street. After appellant turned right onto Nixon Street, he made an almost immediate right turn into a residential driveway. As the officers pulled up to the residence, appellant got out of his car and, with beer in hand, walked toward the residence. The officers directed him to stop, and, when he did not comply, Hall used a taser on him.
 Neither officer could determine the speed of the vehicle. Officer Hall testified that appellant had accelerated to some degree:
We could tell that it did speed up a little bit; not to a real high rate, but a little bit. Because, like I said, we did observe it accelerate, and the dust was blowing up around the vehicle as it was going down the street.

Hall testified that the officers "had to go pretty fast to catch up to" appellant's vehicle. Erpelding testified that he accelerated as fast as his car would go to catch up with appellant after the officers turned around. Hall testified that use of a turn signal and maintaining a low speed is not conclusive as to evading arrest or detention. He explained that appellant "was still evading" when he got out of the car and ignored the officers' orders to stop.
The Video Recording of the Pursuit
 The DVD shows the point at which the officers met appellant's vehicle on the bend and shows the officers turn around, drive through the bend again, and travel back to the northeast on El Barrio Road. At that point, appellant's car is not visible ahead of the officers. It is not until the officers turn left onto Davidson Street that we, through the eyes of the in-dash camera, again see appellant's vehicle. From the DVD and the officers' testimony, it appears that this is the first point at which the officers are directly behind appellant and would be visible in appellant's rear view mirror.
 As the lead police car turned onto Davidson Street, appellant had driven approximately one and one-half blocks north on Davidson Street and had already signaled a right turn onto Nixon Street. Appellant completed that turn as the officers continued north on Davidson Street. After turning right onto Nixon Street, appellant turned right into a driveway almost immediately. From the time that the officers turned left to go north on Davidson Street and saw appellant's vehicle approximately one and one-half blocks ahead signaling to turn right to the moment appellant pulled into the driveway, fifteen to seventeen seconds elapsed.
 At this point, the in-dash cameras remained facing forward and did not record a visual account of the confrontation outside the vehicle. In the audio recording of the interaction outside the residence, as acknowledged by Erpelding at trial, appellant responded to an unidentified bystander that he did not "even know they were following me." Erpelding then explained to him that the officers did not say that he was evading and reiterated that they pulled him over only to investigate the report of a gun in the car.
 Concession of Error
 A person who evades arrest or detention using a vehicle and having been previously convicted of evading arrest or detention commits a third-degree felony. See Tex. Penal Code Ann. § 38.04(b)(2)(A). The State concedes that, to prove appellant guilty of the third-degree felony offense, it was required to introduce evidence of appellant's prior conviction for evading arrest or detention at the guilt-innocence phase of trial and that it failed to do so. See Calton v. State, 176 S.W.3d 231, 234 (Tex.Crim.App. 2005). The State's concession is well-taken; we have reviewed the record and the law and agree that the evidence is legally insufficient as to the third-degree felony offense. With that, we reverse the trial court's judgment reflecting that appellant was convicted of the third-degree felony offense and render a judgment of acquittal as to the third-degree felony. We next determine whether the evidence is factually sufficient to support a finding of guilt on the lesser-included, charged offense of evading arrest using a vehicle, a state-jail felony.
 Factual Sufficiency of the Evidence
 Generally, "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." Tex. Penal Code Ann. § 38.04(a). While, ordinarily, the offense of evading arrest or detention is a misdemeanor, it becomes a state-jail felony if the "actor uses a vehicle while the actor is in flight." Id. at § 38.04(b)(1)(B). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a) (Vernon 2003). There is no statutory definition of the term "flees," as used in section 38.04, though the term is commonly used to mean "to run away often from danger or evil," "to hurry toward a place of security," or "to pass away swiftly." Merriam-Webster's Collegiate Dictionary 478 (11th ed. 2006).
Standard of Review
 In a factual sufficiency review, we review all the evidence, but do so in a neutral light, to determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the tier of fact's verdict is clearly wrong or manifestly unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007); Watson v. State, 204 S.W.3d 404, 414 - 15 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the trier of fact's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See Watson, 204 S.W.3d at 417. We are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Although an appellate court reviewing factual sufficiency has the ability to second-guess the trier of fact to a limited degree, our review should still be deferential, with a high level of skepticism about the trier of fact's verdict required before we reverse the conviction. Roberts, 220 S.W.3d at 524.
Analysis
 Appellant's argument challenges the sufficiency of the evidence showing that he intentionally fled from "a person he [knew] is a peace officer attempting lawfully to arrest or detain him." Tex. Penal Code Ann. § 38.04(a). We employ the above-referenced standard of review to determine whether the evidence is factually sufficient to so show.
 We review all of the evidence in a neutral light. We begin by noting that, while speed, distance, and duration of pursuit may be factors in considering whether a defendant intentionally fled, no particular speed, distance, or duration is required to show the requisite intent if other evidence establishes such intent. See Mayfield v. State, 219 S.W.3d 538, 541 (Tex.App. -- Texarkana 2007, no pet.) (observing that law does not require high-speed fleeing or even effectual fleeing; it requires an attempt to get away from a known officer of the law). We now examine, in a neutral light, the evidence concerning these factors, among others, that concern appellant's mental state.
 Neither officer testified that appellant saw or should have been able to see them in pursuit of him until the point at which they turned in behind appellant on Davidson Street; in fact, each testified that he was uncertain whether appellant saw him. The jury could not translate their uncertainty into belief beyond a reasonable doubt that appellant did see the officers in pursuit prior to their left turn onto Davidson Street. See Redwine v. State, 305 S.W.3d 360, 368 (Tex.App. -- Houston [14th Dist.] 2010, no pet.) ("[I]n the absence of other evidence, the jury could not translate [the officer]'s uncertainty into belief beyond a reasonable doubt."). Erpelding testified that he came within a couple of car lengths of appellant's vehicle only one-half to one block before appellant turned onto Nixon Street. So, even after the officers turned onto Davidson Street, they were following directly behind appellant's vehicle for, at the maximum, one block. The DVD shows the time between the officers' turn onto Davidson Street and the point at which appellant pulled into the driveway was fifteen to seventeen seconds. That fifteen to seventeen seconds is the relevant measure of time in which appellant could have discovered that the officers were attempting to arrest or detain him.
 Hall's insistence that appellant did see them when the officers met appellant's vehicle on the bend of East Ninth Street/El Barrio Road does not reasonably support the jury's verdict that appellant knew the officers were attempting to arrest or detain him. Both officers testified that they had already activated their lights and sirens on the police cars. Appellant, having met the officers traveling in the opposite direction with their lights and sirens already activated, could not have known from that encounter that the officers were attempting to arrest or detain him. To the contrary, officers traveling in the opposite direction using lights and sirens would appear to be responding in that direction to another matter.
 Further, the officers testified about meeting appellant's vehicle somewhere on or near the bend in the road, and the DVD shows the precise point at which the officers and appellant met on the bend. The officers traveled through the bend and were on East Ninth Street when they turned around. At that point, appellant had traveled well past the bend on El Barrio Road in the other direction and either had already turned or was about to turn off that road onto Davidson Street. Consistent with the officers' uncertainty as to whether appellant saw them following him, the DVD suggests that the officers were not behind appellant such that he would have been able to see them turn around or traveling in pursuit of him on the road on which they first met. The positions of the three vehicles, following the officers' u-turns, suggest that the officers may have been visible, if visible at all, over and behind appellant's left shoulder as appellant traveled north on Davidson Street. The officers testified that they were able to see where he turned. Nothing, however, shows that appellant, having already turned left, would have been able to see the officers and conclude that they were now traveling in the same direction as he was in an attempt to arrest or detain him.
 Nothing in the record suggests that appellant was speeding or driving in an erratic manner. There is testimony that he accelerated to some degree after he turned. The officer conceded, however, that deceleration before a turn followed by acceleration after a turn is consistent with regular driving. Evidence that the officers had to accelerate to catch up with appellant is also not necessarily consistent with a pursuit of a person who is evading arrest or detention. The officers testified and the DVD shows that the officers had to turn around after the bend in the road and then accelerate to make up the distance that would naturally occur when a vehicle travels in the opposite direction for some time. Nothing prior to the officers' left turn onto Davidson Street establishes that appellant knew the officers were attempting to arrest or detain him.
 We turn now to the evidence of what occurred from the moment the officers turned onto Davidson Street to travel north in the direction that appellant had turned. The officers testified that when they made the turn onto Davidson Street, they saw that appellant had already signaled to turn right onto Nixon Street. Indeed, the DVD seems to confirm this testimony and seems to show that appellant had slowed to some degree to make that turn as evidenced by what appear to be brake lights.
 The officers continued north on Davidson Street toward appellant, who was preparing to turn right, leaving us with evidence that officers were directly behind appellant with their lights and sirens on for one-half to one block before appellant turned onto Nixon Street, immediately pulled into the residential driveway, exited the car, and, with beer in hand, began walking up to the residence.
 The evidence that appellant got out of the car and, instead of running or hiding, began walking up to the residence while carrying a beer also indicates that he did not know officers were attempting to arrest or detain him. His statement that he did not "even know" the officers were following him also suggests he did not have the requisite intent. We may infer an actor's mental state from actions and statements during and after the incident. See Blozinski v. State, No. 14-07-00664-CR, 2009 Tex.App. LEXIS 2398, at *11 - *12 (Tex.App. -- Houston [14th Dist.] Apr. 2, 2009, no pet.) (mem. op.) (concluding that apologetic and explanatory statements that appellant was "sorry" and "just wanted to get away from you" further supported the conclusion that he had intentionally fled from the officer and citing Alexander v. State, 229 S.W.3d 731, 740 (Tex.App. -- San Antonio 2007, pet. ref'd)). Further, appellant's failure to comply with officers' orders once he exited the car, when we view such conduct and its context neutrally, suggests that he did not know the officers were following him to arrest or detain him. Getting out of the car, carrying a beer, and walking up to a residence at which a number of people had gathered earlier are not actions consistent with one who has been intentionally fleeing or is continuing to intentionally flee pursuing officers. His apparent refusal, upon exiting the vehicle, to comply with the officers' orders, of which we have little testimony and only audio recording, is not an element of evading arrest or detention using a vehicle. Such action may be relevant to some other offense but, in light of the wealth of other evidence indicating that the officers were only directly behind appellant for a maximum of one block, lends very little, if anything, to establish that appellant knew, during that short amount of time and distance, that the officers were trying to arrest or detain him.
 Evidence that the officers were directly behind appellant for one-half to one block such that he would have had a maximum of fifteen to seventeen seconds in order to determine that the officers were attempting to arrest or detain him and respond appropriately is factually insufficient to show that appellant was intentionally fleeing from officers he knew were attempting to arrest or detain him. After reviewing all of the evidence in a neutral light, we exercise our limited ability to second-guess the jury and express a requisite high degree of skepticism about its verdict on these facts. See Roberts, 220 S.W.3d at 524. Having cited to objective evidence in the record that demonstrates that the great weight and preponderance of the evidence contradicts the jury's verdict, we conclude that evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. See Watson, 204 S.W.3d at 417. We sustain appellant's challenge to the factual sufficiency of the evidence to support a conviction for the state-jail felony offense and remand the cause for a new trial so that a second jury will have a chance to evaluate the evidence. See Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).
 Conclusion
 Because the evidence is legally insufficient to support appellant's conviction of third-degree felony evading arrest or detention using a vehicle and having been previously convicted of evading arrest or detention, we reverse the trial court's judgment reflecting conviction of the third-degree felony offense and render a judgment of acquittal as to that offense. Because the evidence is factually insufficient to support a conviction for the state-jail felony offense of evading arrest or detention using a vehicle, we may not reform the judgment to reflect conviction of the state-jail felony and, instead, remand the cause to the trial court for a new trial or other such proceedings as may be consistent with this opinion.

 Mackey K. Hancock
 Justice

Do not publish.