*1221-15*

CASE NO. PD-1221-15

IN THE
COURT OF CRIMINAL APPEALS OF TEXAS
AT AUSTIN, TEXAS

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 07 2015

Abel Acosta, Clerk

PETER PHUC HONG TRAN
Appellant

VS.

THE STATE OF TEXAS
State

FILED IN
COURT OF CRIMINAL APPEALS

DEC 07 2015

Abel Acosta, Clerk

In Appeal No. 05-13-01199-CR
from the
Court of Appeals of Texas
for the Fifth Judical District
Dallas, Texas

---

APPELLANT'S PRO SE PETITION FOR DISCRETIONARY REVIEW

---

Peter Phuc Hong Tran
TDCJ No. 1868964
Hughes Unit
Rt. 2, Box 4400
Gatesville, TX   76597


APPELLANT   PRO SE

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

JUDGE:

Honorable John R. Roach, Jr.
296th Judical District Court of Collin County, Texas

STATE:

Represented by:

Greg Willis
Collin County District Attorney
2100 Bloomdale Rd., Suite 100
McKinney, Texas  75071

At Trail:

Bill Dobiyanski, ADA

Randy Goodwin, ADA

On Appeal:

Andrea L. Westerfeld, ADA


APPELLANT:

Peter Phuc Hong Tran
TDCJ No. 1868964
Hughes Unit
Rt. 2, Box 4400
Gatesville, TX  76597

Represented by:

At Trail:

Christopher Knox
900 Jackson St., Suite 650
Dallas, TX  75202

Bill Wirskye
2001 Bryan St., Suite 410 (LB 92)
Dallas, TX  75201

On Appeal:

Lori L. Ordiway
P.O. Box 793991
Dallas, TX  753991
(Brief Only)

Brett Ordiway
2311 Ceader Springs Rd., Suite 250
Dallas, TX  75201
(Notification Only)

# TABLE OF CONTENTS

PAGE

IDENTITY OF JUDGE, PARTIES, AND COUNSEL          i

TABLE OF CONTENTS                                ii-

INDEX OF AUTHORTIES                              iii-iv

STATEMENT REGARDING ORAL ARGUMENT                vi

STATEMENT OF THE CASE                            vii

STATEMENT OF PROCEDURAL HISTORY                  vii

GROUNDS FOR REVIEW                               viii

AGRUMENT                                         1-26

    Ground One: Lack of sufficient linking evidence     1-5

        Summary of Facts                             1-3
        Affirmative Link to the Crime Required       3-4
        Conclusion                                   5

    Ground Two: Exculpatory evidence in sufficiency review 5-11

        Brooks/Hooper Hypotheticals                  5-6
        COA Opinion                                  6-7
        Justice McCally Addresses This Concern       7-8
        CCA Considers Exculpatory Evidence           8-9
        The Correct Standard                         9-10
        Conclusion                                   10-11

    Ground Three: Deference to Jury's Rejection of Motive 11-16

        COA Opinion                                  11-12
        Jurys Follow Instructions                    12-13
        Aquittal of Robbery Element                  13
        Inconsistent Verdict Theory Not Applicable   13-14
        Texas Cases are Inopposite                   14-15
        Issue in Other Context                       15-16
        Conclusion                                   16

PRAYER                                           ix

Cetificate of Service                            ix

Verification / Date of Mailing to Court          ix

APPENDIX (COA Opinion - suspended by Court)

    "A" - Additional Facts to Support Ground Three

# INDEX OF AUTHORTIES

PAGE

Benavides v. State, 992 S.W.2d 511
        (Tex.App. - Houston [1st Dist] 1999)    14

Brooks v. State, 323 S.W.3d 893 (Tex.Crim.App.2010)    5,6,13-14

Dunn v. U.S., 52 S.Ct. 189 (____)    13

Evans v. Michigan, 133 S.Ct. 1069 (2013)    16

Gear v. State, 340 S.W.3d 743 (Tex.Crim.App.2011)    10

Green v. U.S., 78 S.Ct. 221 (1957)    13

Grey v. State, 298 S.W.3d 644 (Tex.Crim.App.2009)    13,15

Gross v. State, 380 S.W.3d 181 (Tex.Crim.App.2012)    4

Hacker v. State, 389 S.W.3d 860 (Tex.Crim.App.2013)    16

Harris v. Rivera, 102 S.Ct. 471 (1981)    13

Hooper v. State, 214 S.W.3d 9 (Tex.Crim.App.2007)    5,6

Jackson v. State, 3 S.W3d 58
        (Tex.App. - Dallas 1999)    14

Jackson v. Virgina, 443 U.S. 301 (1979)    vi,5,14,15,16

Laster v. State, 275 S.W.3d 512 (Tex.Crim.App.2009)    8,10

Merritt v. State, 368 S.W.3d 516 (Tex.Crim.App.2012)    8

Middleton v. State, 187 S.W3d 134
        (Tex.App. - Texarkana 2006)    12

Moreno v. State, 294 S.W.3d 594 (Tex.Crim.App.2009)    13

U.S. v. Powell, 105 S.Ct. 471 (1984)    13

Price v. Georgia, 90 S.Ct. 1757 (1970)    13

Redwine v. State, 305 S.W.3d 360
        (Tex.App. Houston [14th Dist] 2010)    7

Richardson v. Marsh, 107 S.Ct. 1702 (1987)    12

Solis v. State, 589 S.W.2d 444 (Tex.Crim.App.1979)    4

Stobaugh v. State, 455 S.W.3d 165 (Tex.Crim.App.2015)    4

Stobaugh v. State, 421 S.W.3d 787
        (Tex.App. - Fort Worth 2014)    4

Temple v. State, 390 S.W.3d 341 (Tex.Crim.App.2013)                    3,8

Temple v. State, 342 S.W.3d 572
                (Tex.App. - Houston [14th Dist] 2011)        3,7,11

Winfrey v. State, 393 S.W.3d 763 (Tex.Crim.App.2013)         vi,4,9,10,11

Wise v. State, 364 S.W.3d 900 (Tex.Crim.App.2012)            8

Wooten v. State, 400 S.W.3d 606 (Tex.Crim.App.2013)          12

Zuniga v. State, 144 S.W.3d 477 (Tex.Crim.App.2004)          14

STATUE

Texas Code of Criminal Procedure

        Art. _____                                         15

iv

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Peter Tran, believes oral argument will be benfical in this case. This case involves the correct standards an appellate court must follow when evalutaing sufficiency of the evidence under <u>Jackson v. Virgina</u> and whether the circumstantial evidence was sufficient to link Tran to the murder. Tran argued to the 5th District Court of Appeals that his case was similar to <u>Winfrey v. State</u>, 393 S.W.3d 763 (Tex.Crim.App.2013) and the COA distinguished Tran's case from <u>Winfrey</u>. Oral argument would allow this Court to explore the signficance of the differences between Tran's case and <u>Winfrey</u>. Additionally, oral argument is appropriate to address the conflicting theories of duble jeopary which causes the verdict on the lesser-inclcuded offense operating as an aquittal to the charged offense AND the rejected inconsistent verdict theories in light of <u>Jackson v. Virgina</u> standards that require deference to the Jury's verdict. Moreover, oral argument would allow this Court to look closely at the effects of whether or not appellate courts are required to consider exclupatory evidence, or evidence favorable to the defendant, in sufficiency of the evidence reviews, which dispite this Court's hypotheticals the appellate court's have continued to struggle with and Texas is one of only a hand full of jurisidictions that limits the consideration of explupatory evidence under <u>Jackson v. Virgina</u>. For these resons, Tran request that upon the granting of review in this case that the Court permit oral argument.

## STATEMENT OF THE CASE

Peter Phuc Hong Tran, the Appellant, was charged with capital murder, a murder in the course of a robbery. Tran plead not guilty. At his Jury trial, the contested issues were the identity of Tran as the killer and whether the murder was committed in the course of a robbery. The Jury returned a verdict of guilty on the lesser-incldued offense of murder and sentenced Tran to 25 years in TDCJ. The COA acknowledged that the sole issue on the appeal was "whether the circumstantial evidence linking Peter Phuc Hong Tran to the murder is sufficient to support the conviction." COA Op., p. 1 and n. 1.

## STATEMENT OF PROCEDURAL HISTROY

The 5th District Court of Appeals issued its Opinion in this case, COA No. 05-13-01199-CR, on August 12, 2015. There was no motion for rehearing filed in the court of appeals. This Court of Crminal Appeals of Texas GRANTED an extension of time until Novemeber 10, 2015 for Mr. Tran to file his PRO SE PDR. As explained in his motion for leave for an addititonal extension, Tran misread the Court's notice of the deadline and believed the due date for his PRO SE PDR was November 30, 2015. This date, November 30, 2015, is the date on which Mr. Tran has verified that he has placed this PDR into the prison mailing system for mailing to this Court.

## GROUNDS FOR REVIEW

GROUND ONE: Is the linking evidence sufficient to establish beyond a reasonable doubt Appellant's identity as the killer in this case, where there is no forensic or eyewitness evidence linking Appellant to the murder and nothing in the record supports a deduction by any rational finder of fact that Appellant committed any specific act directed at the deceased; and, when all the evidence did demonstrate is a possible motive (which the Jury rejected), opportunity (with a four hour window), explained possession of the deceased iPhone (and attemps to make it appear that Appellant did not have the iPhone), possible attempts to conceal allegedly incriminating evidence, moving out-of-town back to Appellant's home state (where he had priorly voluntarly returned to speak with police and when he was told he was not a suspect), and other inconsistent statements; all the while, the police admitted nothing new developed connecting Appellant to the murder in the months between the statements/move and the arresst -- not to mention, that the police did not fully investigate the evidence, including forensic evidence, which established other possible suspects.

GROUND TWO: When an appellate court is evaluating the sufficiency of the evidence, is the court required to consider exculpatory evidence, or evidence favorable to the defendant, when determining the reasonableness of inferences drawn from basic facts; or does a court's duty to view the basic facts in favor of the verdict and to defer ot the Jury's resolution of conflicting inferences prevent the court's consideration of evidence favorable to the defendant?

GROUND THREE: As part of an appelate court's duty to evaluate the sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict, and when the Jury's verdict of guilty to the lesser-included offense of murder operates as an aquittal to the charged offense of capital murder, is an appellate court required to evaluate the rationality of the Jury's verdict on the lesser-included offense in isolation, or is the appellate court required to defer to the Jury's rejection of the robbery element of the charged offense; so that, the motivee of robbery (and inference of theft of the iPhone and wad of cash) should NOT have been considered by the appellate court in determining the ratioanlity of the Jury's verdict?

## ARGUMENT

**GROUND ONE:** IS THE LINKING EVIDENCE SUFFICIENT TO ESTABLISH BEOYND A REASONABLE DOUBT APPELLANT'S IDENTITY AS THE KILLER IN THIS CASE, WHERE THERE IS NO FORENSIC OR EYEWITNESS EVIDENCE LINKING APPELLANT TO THE MURDER AND NOTHING IN THE RECORD SUPPORTS A DEDUCTION BY ANY RATIONAL FINDER OF FACT THAT APPELLANT COMMITTED ANY SPECFIC ACT DIRECTED AT THE DECEASED; AND, WHEN ALL THAT THE EVIDENCE DID DEMONSTRATE IS A POSSIBLE MOTIVE (WHICH THE JURY REJECTED), OPPORTUNITY (WITH A FOUR HOUR WINDOW), EXPLAINED POSSESSION OF THE DECEASED IPHONE (AND ATTEMPTS TO MAKE IT APPEAR THAT APPELLANT DID NOT HAVE THE IPHONE), POSSIBLE ATTEMPTS TO CONCEAL ALLEGEDLY INCRIMINATING EVIDENCE, MOVING OUT-OF-TOWN BACK TO APPELLANT'S HOME STATE (WHERE HE HAD PRIORLY VOLUNTARLY RETURNED TO SPEAK WITH POLICE AND WHEN HE WAS TOLD HE WAS NOT A SUSPECT), AND OTHER INCONSISTENT STATEMENTS; ALL THE WHILE, THE POLICE ADMITTED NOTHING NEW DEVELOPED CONNECTING APPELLANT TO THE MURDER IN THE MONTHS BETWEEN THE STATEMENTS/MOVE AND THE ARRESST -- NOT TO MENTION, THAT THE POLICE DID NOT FULLY INVESTIGATE THE EVIDENCE, INCLUDING FORENSIC EVIDENCE, WHICH ESTABLISHED OTHER POSSIBLE SUSPECTS.

## Summary of Facts

The death of Ethan Nguyen was not reported until 8:00 p.m. on February 19, 2012. See, 5th District Court of Appeals ("COA") Slip Opinion, ("Op."), p. 1. Four hours prior to that time, Appellant, Peter Tran, was seen leaving Nguyen's house, which Tran himself informed police about. Id. at 2, 9. There was "blood throughout most of the house and on the front sidewalk." Id. at 2. Yet, the witness who saw Tran leave Nguyen's house did not report to police any signs of blood on Tran. 8 RR 59, 176, 195-196; 9 RR 23-27. Similarly, police were unable to discover any forensic evidence in Tran's car linking Tran to Nguyen nor the murder. 8 RR 59, 100, 196. Also, a "search of Tran's apartment and forensic testing of five blood samples collected from Nguyen's house and the sidewalk revealed no evidence linking Tran to the murder." COA Op., p. 3.

-1-

As a matter of fact, "testing of blood samples from the front sidewalk revealed the blood was of the same person, but the person was neither Nguyen nor Tran." Id. at 6. Dispite that fact, police did not test and compare the unidentified male's DNA profile to DNA samples collected from many of Tran's friends. Id. at 4. Police did not even run a comparison of the unidentified male's DNA profile against a CODIS search, as suggested by the DNA lab report. 9 RR 30-33. Police also did not test "additional blood evidence found inside the house [when], a possbility existed that those samples might have matched the samples from the sidewalk." COA Op., p. 6. This was all because the police believed that Tran was the only suspect and it was "obious" Tran was guilty. 8 RR 193; 9 RR 247. Yet, even when there was no additional evidence gathered to link Tran to the murder, it took police several months to obtain an arrest warrant and to arrest Tran. 8 RR 186-187, 242-245; 9 RR 7-8.

In the same vain, police failed to follow-up on other investigative leads, such as Nguyen's online (sexual) activity and that "Nguyen was expecting a large supply of Adderall," an illegal drug. See, COA Op. p. 2, 6. Specifically, police did not investigate Chris Cole who they admitted acted "suspicious." Id. at 6. In fact, Chris Cole knew details of the murder that police did not even know and that police had not shared with the public. 7 RR 8, 20-23, 28, 55-56, 260, 303-304, 307; 9 RR 12-13. Yet, the lead detective, or case manager, did not even know who Chris Cole was nor if they had taken a DNA sample from him. 8 RR 200.

Unfortantly, Tran did not adequatley explain why he had possession of Nguyen's iPhone and why he continued to call and

text the iPhone after Tran realized he had the iPhone. COA Op., p. 3, 9. Tran also made other inconsistent statements to police and apparently threw away the cloths he was wearing the day of the murder, Id. at 9. Even if one makes some negative inference from Tran moving back home to Kansas months after the incident and when police had told him he was not a suspoect (and could do whatever he wanted) and when Tran had priorly voluntarly returned to Texas to speak with police -- all of these events were in the **aftermath** of the murder.[1] 7 RR 14, 36, 269-271, 284; 8 RR 91, 177; 9 RR 180-187. Thus, there was only evidence to indicate that Tran had a consciuosness of guilt; but, no evidence linking Tran to any specific acts committed against Nguyen. Based upon this lack of evidence and the reasonable doubt created by the police's poor investigation and other possible suspects, NO RATIONAL trier of fact could have found Tran guilty beyond a reasonable doubt.

## Affirmative Link to the Crime Required

Appellant, Peter Tran, does not dispute that factors such as motive, opportunity, inconsisent statements, and possession of stolen proerty could all support inferences of guilt to some unnamed criminal activity. However, :

> "A rational jury cannot find, beyond a reasonable doubt, that one individual caused the death of another based soley upon (1) circumstantial evidence of motive, (2) circumstantial evidence of opportunity, and (3) infrences of guilt, none of which actually provide an affirmative link to the crime."

See, <u>Temple v. State</u>, 342 S.W.3d 572, 645 (Tex.App. - Houston [14th Dist] 2011)(McCally, J. dissenting to denail of en banc reconsideration), aff'm 390 S.W.3d 341 (Tex.Crim.App.2013); See also,

---

1. The COA also relied upon an inference of a motive, mainly robbery. COA Op. p. 9. Appellant in Ground Three disputes that such a motive can be used to support the verdict when the Jury aquitted Tran of capital murder with its robbery element.

Winfrey v. State, 393 S.W.3d 763 (Tex.Crim.App.2013)(evidence did "not reveal any action on her part to actually kill Burr..."), Solis v. State, 589 S.W.2d 444, 447 (Tex.Crim.App.1979)("behavior after the removal of screen was sufficiency inexplicable that reasonable doubt remains as to what his specific criminal intentions actually were.").

In this case, it was Tran's post-offense conduct alone that the COA used to infer from the circumstantial evidence that Tran was the killer. See, COA Op., p. 9; cf. Gross v. State, 380 S.W.3d 181, 186, 188 (Tex.Crim.App.2012)(at least in a law of parties case post-offense conduct standing alone is insufficent). Nothing in the record links Tran to the murder no matter how negative the circumstances or consciuosness of guilt generally. While the end result in Stobaugh v. State, 421 S.W.3d 787 (Tex.App. - Fort Worth 2014) was affected by the lack of a body, or proff of wrongful conduct, and it was considering means rea, the court of appeals **prior** to addressing the lack of wrongful conduct said,:

> "This evidence, along with the other evidence, viewed in the light most favorable to the State supports a reasonable inference that Kathy is dead and certainly establishes that Charles possessed a possible motive and a definite opportunity to kill Kathy. This evidence viewed in the light most favorable to the State likewise establishes that Charles lied about certain events surrounding Kathy's disappearance - calling Kathy's cell phone and leaving a message and hiring a private investigator with Kathy's money - and that Charle's conduct after December 29 was suspicious. But the question is whether the cumulative force of the facts in the record before us support a deduction by any rational finder of fact of the logical consequence or conclusion that [Charles intended to kill Kathy]. ... Viewing all of the evidence in the light most favorable to the State, no facts exist in the record before us that Charles committed any specific act directed at Kathy..."

See, Stobaugh, 421 S.W.3d at 863, PDR ref'd, 455 S.W.3d 165 (Tex. Crim.App.2015).

-4-

Conclusion

This is the very same problem with Tran's case -- no facts exisist in the record that Tran committed any specific act directed at Nguyen. It is all speculation. Moreover, like the Hooper hypothetical, there is evidence in the record which demonstrates that "there are other people in the room with a smoking gun." See, Hooper v. State, 214 S.W.3d 9, 16 (Tex.Crim.App.2007). Thus, just as in the Hooper hypothetical, "absent other evidence of [Tran's] guilt, it is not reasonable to infer that [he] was the [killer]. No rational juror should find beyond a resonable doubt that [he] was the [killer], rather than any of the other people with smoking guns. To do so would require impermissible speculation." Id.


GROUND TWO: WHEN AN APPELLATE COURT IS EVALUATING THE SUFFICIENCY OF THE EVIDENCE, IS THE COURT REQUIRED TO CONSIDER EXCULPATORY EVIDENCE, OR EVIDNECE FAVORABLE TO THE DEFENDANT, WHEN DETERMINING THE REASONABLENESS OF INFRENCES DRAWN FROM BASIC FACTS; OR DOES A COURT'S DUTY TO VIEW THE BASIC FACTS IN FAVOR OF THE VERDICT AND TO DEFER TO THE JURY'S RESOLUTION OF CONFLICTING INFERENCES PREVENT THE COURT'S CONSIDERATION OF EVIDENCE FAVORABLE TO THE DEFENDANT?

Brooks/Hooper Hypotheticals

While the standards for evaluating sufficiency of the evidence are well-know, the sheer number of cases concerning sufficiency of the evidence reviews that this Court has granted review of in recent years counsels that there is still some confussion. Perhaps some of that confussion is the residual effect of the removal of factual sufficiency reviews in order to return to a more rigorous and proper application of the Jackson v. Virgina standards. See, Brooks v. State, 323 S.W.3d 893, 907, 908 (Tex. Crim.App.2010)(following Jackson v. Virgins, 443 U.S. 301 (1979)),

Temple, 343 S.W.3d at 646 (McCally, J., dissenting). Yet, even a few years before Brooks this Court handed down the Court's leading decision about evaluating the reasonableness of inferences drawn from basic facts. See, Hooper, 214 S.W.3d at 9-17. Signficant to this case is that in both Brooks and Hooper this Court provided hypotheticals to guide the appellate courts in their sufficiency of the evidence reviews.

Both of these hypotheticals considered exculpatory evidence, or evidence favorable to the defendant, in order to illustrate when a jury's verdict could be irrational. In the Brooks hypothetical the exculpatory evidence of a surveillance video which demonstrated that the defendant was NOT the suspect who committed the offense. See, 323 S.W3d at 907. Similarly, in the Hooper hypothetical the exculpartory evidence made it so that it was speculative whether the defendant was the suspect who committed the offense as that evidence demonstrated other possible suspects. See, 214 S.W.3d at 16. Thus, at the very least, these hypotheticals teach that when evaluating the sufficiency of the evidence concerning the idenity of the offender, an appellate court should consider evidence favorable to the defendant.

COA Opinion

The 5th District Court of Appeals ("COA") in this case refused to consider exculpatory evidence in its evaluation of whether the inferneces necessary to sustain the conviction were reasonable rather than speculative. Specifically, the COA held,:

> "Although Marks acknowledged not all information
> gathered pointed to Tran and officers did not investigate
> every piece of information recieved, the legal sufficiency
> standard of review requires the evidnce to be viewed
> in the light most favorbale to the verdict."

See, COA Op., p. 9-10 (cite omitted). Thus, even though the

COA had, in its Opinoin, detailed some of the exculpatory evidence in the light most favorable to the verdict, the COA refused to consider the stated and other exculpatory evidnce when determining whether the inferences neccessary to sustain the conviciton were reasonable. The COA's reason for refusing to consider any evidence favorable to Tran was because the court was required to view the evidence in the light most favorable to the verdict.

Justice McCally Addresses This Concern

Justice McCally of the 14th District Court of Appeals has directly addressed this concern. Justice McCally's dissent to the denial of EN BANC reconsideration in Temple pointed out that,:

> "Instead of reviewing all of the evidence in the
> Temple record, the panel disregarded sustantial evidnce.
> In the name of deference to the jury, the panel concluded
> that any evidence favorbale to the defense must have
> been disregarded by the jury, and therefore we, the
> reviewing court, must disregard it as well. ..."

See, 343 S.W.3d at 632-633. Justice McCally further gave excellent examples of the difference between conflicting reasonable inferences that a jury selects to follow and inferences that are pure speculation. Id. at 642. Importantly, Justice McCally explained how she excluded from her anylasis evidence, and inferneces from that evidence, which the jury could have diabelieved. Id. at 643.

In her discussion of this issue, Justice McCally cited to Redwine v. State, 305 S.W.3d 360, 366 n.12 (Tex.App. - Houston [14th Dist] 2010, pet. ref'd) wherein that court noted,:

> "[D]isregarding all contrary evidence, no matter
> how mountainous or compelling it may be, appears incongruous
> with the reviewing court's task of deciding whether
> a rational fact finder could have found a defendant
> guilty beyond a reasonable doubt given that it is evidence
> contrary to the verdict that commonly injects the element
> of 'reasonable doubt' into jury deliberations."

The court of appeals in Redwine also explained that the "consider-

-7-

and-disregard componet of the legal-sufficiency standard has been interpreted as requiring reviewing courts to **disregard all** evidence not supporting the verdict." Id. at 366 (cites omitted). Moreover, the court of appeals noted that Texas is amoung only a handful of jurisdictions who disregard evidence favorable to the defendant in legal-sufficiency reviews. Id. at 366 n.11.

## CCA Conisders Exculpatory Evidence

While this Court ended up agreeing with the original panel in Temple, this Court did not directly address Justice McCally's and the 14th District Court of Appeals' concerns. See, 390 S.W.3d 341. In fact, in at least once instance, this Court appeared to agree with Justice McCally that exculpatory evidence must be considered when evaluating the sufficiency of the evidnce. Justice McCally had pointed out that the original panel in Temple refused to consider the testimony of the two young neighborhood boys who testified that the gun shoots were at a time when the appellant was on a surveillance video at a local grocery store. See, Temple, 343 S.W.3d at 633. This Court's own anaylsis of the sufficiency of the evidence in Temple did consider that exculpatory evidence. See, 390 S.W.3d at 362. Yet, when it came to the evidence of RJS III being a possible suspect, this Court was concerned that focusing on the RJS III evidence would be requiring the State to exclude every conceivable alternative to a defendant's guilt. Id. at 363.

In other cases, this Court has similarly vacillated between considering exculptory evidence and rebuking the court of appeals for acting as a 13th juror in considering evidence favorable to the defendant. See, i.e., Merritt v. State, 368 S.W.3d 516, 526 (Tex.Crim.App.2012), Wise v. State, 364 S.W.3d 900, 907 (Tex.Crim App.2012), Laster v. State, 275 S.W.3d 512, 522-523 (Tex.Crim.App.2009).

_Winfrey_ remains the best example of how this Court does include

evidence (and inferences) favorable to the defendant in sufficiency

of the evidence reviews.   In _Winfrey_ this Court considered,:

> 1)   The dog scent evidence "simply indicated that
> appellant had had some contact with Burr's clothing,
> although the timing, circumstances, and degree of that
> contact cannot be determined."  See, 393 S.W.3d at 787, 770.

> 2)   The testimony of a jailhouse informant tended
> to inculpate appellant's father more and the jailhouse
> informant recognized his testimony was hearsay.  Id. at 771-772.

> 3)   The appellant testified that she regularly shaved
> her pubic hair and, later voluntarly gave a sample
> which did not match evidence from the crime scene. Id. at 772.

> 4)   The appellant's DNA did not match the drops of blood
> found on the vacuum at the crime scene.  Id. at 772.

> 5)   The appellant's "easy lick" comment "did not reveal
> any action taken on her part to actually kill Burr
> and take his money and it is even less incriminating
> when we consider that the police investigation was
> unable to determine that any money had been taken."  Id. at 772.

> 6)   "[N]o evidence indicate[d] when and under what circumstances
> the gun or guns were removed... [or] that appellant had
> any involement with the removal..."  Id. at 772.

Most importantly is that in considering this evidence (and inferences)

which were favorbale to Mrs. Winfrey, this Court rejected the

dissent's concern that in doing so the Court was reviewing the

evidence in the wrong light.  Id. at 774 (Keller, P.J., dissenting).

The Correct Standard

> _Winfrey_ stated the proper standard as,:

> > "In determing whether the evidence is legally
> > sufficient to support a conviction, a reviewing court
> > must consider all the evidence in the light most favorable
> > to the verdict and determine whether, based upon that
> > evidence **and**  reasonable inferences therefrom, a rational
> > fact finder could have found the essential elements
> > of the crime beyond a reasonable doubt."

See, 393 S.W.3d at 768 (emphasis added).  Here one sees that

it is only the basic facts which are viewed in the light most

favorbale to the verdict; and, then, based upon those facts together

— 9 —

with any **reasonable** inferences, the determination is made about the sufficiency of the evidence. As this Court has priorly said,:

> "As long as the verdict is supported by a reasonable inference, it is within the province of the fact finder to choose which inference is most reasonable."

See, Later, 275 S.W.3d at 523. Judge Cochran has explained that this Court,:

> "[R]ead[s] Laster to mean that while the fact finder's preogative to choose amoung plausible and rational readings of the evidence is beyond our review, there must still be some evidence to prove the essential elements of the offfense and a verdict must be supported by a reasonable inference."

See, Gear v. State, 340 S.W.3d 743, 749 (Tex.Crim.App.2011)(Cochran, J., dissenting). It is the basic facts which must be viewed in the light most favorable to the verdict and the "reasonableness" of the necessary inferences is a question of law based upon those basic facts.

Conlcusion

The standard for evalusting the basic facts in order to determine "whether the necessary inferences are reasonable" is to consider "the combined and cummlative force of all the evidnence..." See, Winfrey, 393 S.W.3d at 768. Perhaps most telling in this case is that the COA never even cited to this standard of considering the "coembined and cummlative force of all the evidence." Rather, in applying the standard of viewing the basic facts in the light most favorbale to the verdict to the COA's evaluation of the reasonableness of the inferences, the COA explictly refused to consider "all the evidence" as it would have incldued evidence favorbale to Tran. COA Op., p. 9-10. This case demonstrates that appellate courts have "continue[d] to wrestle with circumstantial evidence, and inferences, and how to afford appropriate deference

in the refining of <u>Brooks</u>." See, <u>Temple</u>, 343 S.W.3d at 646 (McCally, J., dissenting). The compelling exculpatory evidence acknowledged by the COA in this case, which the COA refused to consider in the court's sufficiency of the evidence analysis, offeres this Court of Criminal Appeals of Texas an excellent opportunity to resolve this concern.

**GROUND THREE:** AS PART OF AN APPELLANT COURT'S DUTY TO EVALUATE THE SUFFICIENCY OF THE EVIDENCE BY VIWEING THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THE VERDICT, AND WHEN THE JURY'S VERDICT OF GUILTY TO THE LESSER-INCLUDED OFFENSE OF MURDER OPERATES AS AN AQUITTAL OF THE CHARGED OFFENSE OF CAPITAL MURDER, IS AN APPELLATE COURT REQUIRED TO EVALUATE THE RATIONALITY OF JURY'S VERDICT ON THE LESSER-INCLUDED OFFENSE IN ISOLATION, OR IS THE APPELLATE COURT REQUIRED TO DEFER TO THE JURY'S REJECTION OF THE ROBBERY ELEMENT OF THE CHARGED OFFENSE; SO THAT, THE MOTIVE OF ROBBERY (AND INFERENCE OF THEFT OF THE IPHONE AND WAD OF CASH) SHOULD **NOT** HAVE BEEN CONSIDERED BY THE APPELLATE COURT IN DETERMINING THE RATIONALITY OF THE JURY'S VERDICT?

<u>COA Opinion</u>

In order to find sufficient evidence to sustain Appellant, Peter Tran's, conviction, the 5th District Court of Appeals ("COA") relied upon the idea that Tran had a motive for the murder and an inference that Tran "stole" Nguyen, the decedent's, iPhone and money. Specifically, the COA found that, "the record here reflects a motive for murder. Tran was in debt and needed money." See, COA Op., p. 9. In fact, this was the primary item in the COA's view that distinguished Tran's case from <u>Winfrey v. State</u>, 393 S.W.3d 763 (Tex.Crim.App.2013), which is the case Tran relied upon to support his appellate arguments. Id.; cf. COA Op., p. 6. Similarly, the COA relied upon Tran's possession of Nguyen's iPhone and possible missing "wad of cash" in order to apply the theory that "possession of stolen property supports inference of guilt of offense in which property was stolen." Id. at 9

(citing <u>Middleton v. State</u>, 187 S.W.3d 134, 138 (Tex.App. - Texarkana 2006, no pet.).[2]

However, the COA also noted in its Opinion that even though Tran was charged with capital murder, a murder in the course of a robbery, the Jury rejected the charged offense when the Jury returned a verdict on the lesser-included offense of murder. See, COA Op., p.1 n.1.  Therefore, the record in this case supports that by its verdict the Jury rejected ~~the~~ that Tran's motive" for the murder was a robbery and rejected that Tran "stole" either the iPhone or the wab of cash."  1 CR 131, 140 ("Statute for Offense: 19.02(b)(1) Penal Code); See also, APPENDIX "A" - Additonal Facts Supporting Ground Three.

## Jurys Follow Instructions

Any other conclusion would mean that the Jury did not follow the trial court's instructions.  The law is well-settled that there is an "almost invariable assuption [] that jurors follow their instructions."  See, <u>Richardson v. Marsh</u>, 107 S.Ct. 1702, 1707 (1987), <u>Wooten v. State</u>, 400 S.W.3d 606, 610 (Tex.Crim.App.2013). In this case, the trial court instructed Tran's Jury on capital murder and then required that, "**Unless** you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will consider the lesser included offense of murder."  1 CR 127 (emphasis added). This was an instruction to not deliberate on the lesser-included offense **unless** there was a reasonable doubt as to the charged offense.  Meaning, that in following that instruction the Jury determined Tran was NOT GUILTY of capital murder with its robbery element.

---

2.    There are numerous problems with such an inference in this case.  First, it presumes the iPhone was stolen as part of the "offense", a fact the Jury rejectd as argued herein.  Additionally, it is an inferenced created for burglary cases and it is not at all clear that it should apply to murder charges.  Also, in this case there is an explanation for the possession, Tran was with Nguyen all day.

## Aquittal of Robbery Element

Indeed, the final verdict of Tran's Jury prevents any court from again using the "motive" of a robbery to support a conviction. The simple fact is that a Jury's rejection of the capital murder charge and its essential element of a robbery in the course of a murder operates as an aquittal of the greater offense. See, Price v. Georiga, 90 S.Ct. 1757 (1970), Green v. U.S., 78 S.Ct. 221 (1957), Grey v. State, 298 S.W3d 644, 647 (Tex.Crim.App.2009). Interestingly, one of the reasons given to support that a jury's finding on a lesser-included offense operates as an aquittal of the greater offense, is that, just as a trial Judge is presumed to act in good faith over nullification, jurys are similarly assumed to follow a court's instructions and to act rationally. See, Evans v. Michigan, 133 S.Ct. 1069, 1079, 1080 (2013). Additionally, an aquittal in this instance, as in all other instances, stands regardless of whether the Jury's fiding was erronoues. Id. at 1074, Moreno v. State, 294 S.W3d 594, _____ (Tex.Crim.App.2009).

## Inconsistent  Verdict Theory Not Applicable

In contrast, there is no question that the U.S. Supreme Court has rejected the theory of **free standing** inconsistent verdicts. See, U.S. v. Powell, 105 S.Ct. 471 (1984), Harris v Rivera, 102 S.Ct. 471 (1981), Dunn v. U.S., 52 S.Ct. 189 (_____). But, Tran is NOT presenting a free standing inconsisten verdict claim. The reason the U.S. Supreme Court rejected the inconsistent verdicts theory was based upon the idea that a jury acts irratioanlly and fails to follow the court's instructions. See, Powell, 105 S.Ct. at 476, 477. Whereas, Tran brings a sufficiency of the evidence ground which is based upon wether the Jury did in fact act ratioanlly. As it was said in Brooks, "The final test

-13-

for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." See, 323 S.W.3d at 922 (Cochran, J., concurring). The reasons the Supreme Court rejected free standing inconsistent verdict claims are inconsistent with the Consitutional goals of Jackson v. Virgina of whether a jury acted rationally and precedent concerning free standing inconsistent verdict claims should not apply to Tran's sufficiency of the evidence ground.

Texas Cases Are Inopposite

This issue has not been directly addressed by Texas courts. When Texas courts have reviewed the effect of a verdict on a lesser-included offense upon sufficiency of the evidence reviews, the courts have misapplied the inconsistent verdicts theory. Specifically, as lately as 1999, the 5th District Court of Appeals has itself recognized that,:

> "Most of the cases in this area involve inconsistent verdicts on multi-count indictments, or separate, but factually related crimes. [W]e can find no Texas or federal case applying the Dunn rule to a trial court's verdict aquitting a defendant of a greater offense and, apparantly, inconsistently convicting him of a lesser included offense..."

See, Jackson v. State, 3 S.W.3d 58, 62 (Tex.App. - Dallas 1999); See also, Benavides v. State, 992 S.W.2d 511, 518 (Tex.App. - Houston [1st Dist] 1999)(concerned with sufficiency of a Jury's finding on the defensive issue of self-defnese and determining that the jury's verdict did not rely upon the disputed and rejected fact). The closest this Court has itself gotten to touching on this issue was in Zuniga v. STate, 144 S.W.3d 477 (Tex.Crim.App.2004).

Yet, Zuniga is inopposite. The problem in Zuniga was that the appellate court interpreted the jury's verdict to have selected amoung alternative theories of committing the same offense when

-14-

state law prevented a "special verdict" in that instance. However, in Tran's case, his Jury returned a verdict on the lesser-included offens of murder, which is explicitly allowed by state law. See, Tex. Code Crim. Proc., art.   .  Therefore, the Jury's general verdict in this case is different  from the special verdict in Zuniga. The COA should have been required to defer to the Jury's finding in its general verdict which rejected robbery as a motive for the murder.

## Issue in Other Context

Finally, this Court has touched upon this issue when dealing with the State's request for an improper inclusion of an instruction on a lesser-included offense in the jury charge, over the defense's objection. Specifically, this Court said,:

> "If the lesser incldued offense is viewed in isolation, a jury's verdict would be rational so long as the lesser offense is included in the charging instrument and supported by legally sufficient evidence. The 'guilty only' prong of Royster-Rousseau test requires, however, that we view the rationality of the lesser offense, not in isolation, but in comparison to the offense described in the charging instrument."

See, Grey, 298 S.W.3d at 649. Yet, in Grey this COurt held that the State is not bound by the guilty-only prong of the lesser-included offense standard in order to be entitled to an instruction. That holding does not establish whether sufficiency of the evidence reviews under Jackson v. Virgina should evaulate the ratioanlity of the Jury's verdict on a lesser-included offense in isolation or in comparison to the charged offense. Grey did teach that the State should not be punished, so to speak, for electing to include a lesser-incldued offense instruction. However, Grey was dealing with regular, non-consitutional trial error which is different from the Constitutional sufficiency reviews that

-15-

focus on the rationality of a jury's verdict.

Conclusion

In Tran's case, the State got its response from the Jury on the charged offense and <u>Jackson v. Virgina</u> demands that an appellate court defer to the Jury's rejection of the robbery element of the capital murder charge. <u>Grey</u> itself acknowledged that no court may again use the facts rejected by the Jury in order to sustain the conviction. Id. at 647. Thus, the question is raised -- would a rational jury reject that the murder was committed in the course of a robbery and then rely on the motive of a robbery in order to convict Tran of the lesser-included offense of murder? Or, to put it another way, should the COA have defered to the Jury's rejection of the motive being a robbery when the COA was evaluating the sufficiency of the evidnece?

This answer should be "YES", that like alwyas, the COA must defer to the Jury's findings. It has been said that "motive might be the glue that holds the entire case together." See, <u>Hacker v. State</u>, 389 S.W.3d 860, 870 (Tex.Crim.App.2013). That is true in this case, without the motive of robbery, the State's case against Tran falls apart and the inferences necessary to sustain the conviction are no longer reasonable but are pure speculation; so that, no rational jury would have found Tran guilty of the lesser-incldued offense of murder beyond a reasonable doubt. At trail the State admitted,:

> "The phone is a package deal. The property is all keep together. You can't separate the murder and the robbery and that's what makes this a capital murder, folks. Peter Tran takes the property. But the only way he can take the property is if he kills his friend.

9 RR 116, 120. This Court should grant review to address this concern.

-16-

## PRAYER

WHEREFORE, ALL CONSIDERED, PETER PHUC HONG TRAN, the Appellant, acting PRO SE, PRAYS this Honorbale Court GRANT review in this case for any one, some, or all the reasons given herein on any one, some, or all the proposed grounds, or on any ground the Court itself finds to grant review; AND, ANY AND ALL OTHER RELIEF THIS COURT FINDS PROPER IN THE INTEREST OF JUSTICE.

x _____

Peter Phuc Hong Tran
TDCJ. No. 1868964
Hughes Unit
Rt. 2, Box 4400
Gatesville, TX  76597

APPELLANT PRO SE

## CERTIFICATE OF SERVICE

I, Peter Phuc Hong Tran, certify that I have caused a copy of this PRO SE PDR to be served by 1st Class USPS on the Collin County District Attorney and the State Prosecuting Attorney on this the __25__ day of ___November___, 2015.

x _____
Peter Phuc Hong Tran
Appellant PRO SE

## VERIFICATION / DATE OF MAILING TO COURT

I, Peter Phuc Hong Tran, TDCJ No. 1868964, being presently incarcerated in the HUGHES Unit of TDCJ-CID, in CORYELL County, Texas, do declare under the penalty of perjury that the facts in this PDR are true and correct and that I caused this PRO SE PDR to be mailed to the Clerk of the Court of Criminal Appeals of Texas, as addressed in the coverletter attached hereto, by placing the same in the prison mail system on the date executed below.

EXECUTED on this the __25__ day of ___November___, 2015.

x _____
Peter Phuc Hong Tran
Appellant PRO SE

i X

Affirmed as Modified; Opinion Filed August 12, 2015.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-01199-CR

### PETER PHUC HONG TRAN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court
Collin County, Texas
Trial Court Cause No. 296-81478-2012

# MEMORANDUM OPINION

Before Justices Lang, Brown, and Whitehill
Opinion by Justice Lang

The sole issue in this appeal from a jury conviction and twenty-five year sentence for murder[1] is whether the circumstantial evidence linking Peter Phuc Hong Tran to the murder is sufficient to support the conviction. We conclude it is and affirm the trial court's judgment.

## I. BACKGROUND

On February 19, 2012, around 8:00 p.m., Anne Nguyen came home to the house she shared with her thirty-three year old son Ethan Nguyen, found him lying on the floor covered in blood behind a couch in the living room, and called her sister who called 9-1-1. Nguyen had

---

[1] Tran was charged with capital murder. Specifically, the State alleged he caused Nguyen's death by stabbing him with a knife or unknown object while in the course of robbing or attempting to rob Nguyen. However, the jury, authorized to convict Tran of capital murder or the lesser included offenses of murder or aggravated robbery, found Tran guilty of murder.

been stabbed multiple times. Nguyen's iPhone, his watch, and a Louis Vuitton messenger bag containing his sunglasses were missing. There was no sign of forced entry into the house. However, an overturned chair by the front door and blood smears on the wall and window sill in the study suggested a struggle had occurred.

The police arrived within minutes of the 9-1-1 call and found blood throughout most of the house and on the front sidewalk. They also found a paper knife sheath on the kitchen floor, approximately $20,000 in cash in Nguyen's room and closet, and receipts in his room and car showing he had been shopping at a nearby mall and electronics store between 2:00 and 3:45 p.m. that day.

Over the next two days, officers interviewed friends and neighbors and reviewed security camera video footage obtained from the stores where Nguyen had shopped. The video footage showed Nguyen accompanied by an Asian male wearing white shoes, jeans, and a white "hoodie." This same male, later identified as Tran, was seen leaving Nguyen's house by one of his neighbors around 4:30 or 4:45 p.m. the day of the murder. Officers learned from the interviews Nguyen was a professional poker player who used Adderall, an amphetamine, so he could play poker "all night." Also, they learned Nguyen was expecting a shipment of 1,000 to 2,000 Adderall pills from the Cayman Islands, and any visitors he had at his house usually came late at night or early in the morning.

On February 22, 2012, Tran called the police department and asked one of the officers assigned to the murder if he could help in the investigation. The officer asked Tran if he would come to the station for an interview and bring with him the clothes he was wearing while with Nguyen. Tran agreed and met with officers that same day. However, he did not bring the clothes or shoes with him. When asked about those items, Tran replied the "hoodie" was Nguyen's and he returned it to him before parting ways. He said nothing about the jeans and stated the brown shoes he was wearing were the ones he wore while with Nguyen.

-2-

The police asked Tran how he spent his time with Nguyen the day Nguyen was murdered. Tran responded he met Nguyen at Nguyen's house around noon, and they left for the mall in Nguyen's car. On the way, they stopped at an ATM. Nguyen was carrying a "wad of cash" and bank card held together by a rubber band. He deposited $1600. Then, they had lunch and shopped. They returned to Nguyen's house around 4:00 p.m. Tran initially said he went to his car, but later in the interview, admitted he went into Nguyen's house for a short period of time. Tran saw one of Nguyen's neighbors walking by as he got in his car and left for his apartment. Tran texted and called Nguyen a few times later that evening and over the next two days, until he learned of Nguyen's murder.

Tran agreed to a second interview the following week. At that interview, he was asked if he had taken Nguyen's iPhone with him when he left Nguyen's house. Investigators had learned the night before that records of Nguyen's iPhone showed the phone active near Tran's apartment and in different locations along the path Tran told investigators he had taken after leaving Nguyen's house. Tran initially denied he had taken the phone, but later admitted he had accidentally taken it. He stated he drove to Nguyen's house the night of the murder to return the phone, but did not stop because the police were there. He later threw the phone in a dumpster. Asked again about the clothes he was wearing while shopping with Nguyen, he replied he threw the shoes away because one of them had a hole and also threw away the jeans because they "ripped." When asked if he killed Nguyen, Tran emotionally denied it.

Within a few days of the second interview, Tran vacated his apartment and moved to Wichita, Kansas. A search of Tran's apartment and forensic testing of five blood samples collected from Nguyen's house and the sidewalk revealed no evidence linking Tran to the murder. However, investigators concluded Tran killed Nguyen based on the records of Nguyen's cell phone, Tran's calling and texting Nguyen even though in possession of Nguyen's

—3—

phone, Tran's discarding Nguyen's iPhone and the shoes and jeans he was wearing the day of the murder, and his move to Wichita. Tran was arrested in Wichita on May 7, 2012.

At trial, Nguyen's friends Austin Jeng, Dylan Cheng, and Philephone Just testified Nguyen and Tran knew each other from playing poker. Nguyen was a successful player known to carry in his front pocket "a lot of cash," usually "hundred dollar bills tied up with a rubber band around it so the money [was] visible whenever he took it out." Tran, on the other hand, was in debt, struggling financially, and was relatively new at playing poker. According to the witnesses, Nguyen "took him in as a student" and lent him money. Following Nguyen's death, Tran contacted Cheng and Just several times, scared and worried that investigators would "pin" the murder on him since he was the last person with whom Nguyen was seen. Tran also asked Cheng if he could borrow money.

The apartment manager where Tran lived before moving to Wichita testified she was contacted by the police shortly after the murder and informed Tran was considered a suspect. She asked Tran what had happened, and Tran told her the murder occurred after a fight during a poker game. Tran also told her the police were looking for a Louis Vuitton bag.

Detective Charles Marks testified several officers were involved in the investigation, but he was the "case manager" or lead detective. According to Marks, no evidence was found suggesting the person who killed Nguyen was "looking for things to steal." The bedrooms were "undisturbed," no electronic devices were taken, and the cash found in Nguyen's room and closet appeared "untouched." However, the cash Tran reported Nguyen had in his pocket the day he was murdered was not found on his person when police arrived at the house.

Marks testified officers collected "DNA samples" from many of Nguyen's friends, but only Tran's was tested. Marks explained Tran was the only suspect "developed" from the information gathered during the investigation. Tran was the person last seen with Nguyen and

-4-

the only one who gave inconsistent statements. Also, the "hoodie" Tran claimed to have returned to Nguyen was not found in Nguyen's house or car.

Based on the information gathered and interviews with Tran, which were played to the jury, Marks put together a timeline showing the events of the day of the murder:

| | |
|---|---|
| 10:30-10:45 a.m. | Nguyen's mother sees and talks to Nguyen. |
| 12:15 p.m. | Text indicates Tran is at Nguyen's house. |
| 12:52 p.m. | Nguyen makes ATM deposit of $1600. |
| 1:08 p.m. | Nguyen and Tran park at the mall. |
| 1:10 p.m. | Nguyen and Tran have lunch. |
| 2:08 p.m. | Nguyen and Tran start shopping. |
| 3:15 p.m. | Nguyen and Tran leave the mall. |
| 3:25 p.m. | Nguyen and Tran stop at a nearby electronics store. |
| 3:46 p.m. | Nguyen and Tran leave the electronics store. |
| 4:30/4:45 p.m. | Nguyen's neighbor notices Tran departing Nguyen's house. |
| 4:44 p.m. | Nguyen's iPhone "registers" a few miles from his house. |
| 4:51 p.m. | Tran texts Nguyen. |
| 5:20-5:42 p.m. | Nguyen's iPhone "registers" at different locations along the path Tran drove to his apartment and "rests" at Tran's apartment. |
| 6:27 p.m. | Nguyen's iPhone "registers" at a location near Tran's apartment. |
| 7:14 p.m. | Tran texts Nguyen. |
| 7:27 p.m. | Nguyen's iPhone registers at the same location it did at 6:27 p.m. |
| 8:17 p.m. | Nguyen's mother finds Nguyen. |
| 9:14 p.m. | Nguyen's iPhone registers near Tran's apartment. |
| 10:32 p.m. | Tran calls Nguyen. |
| 11:37 p.m. | Tran calls Nguyen again. |

11:41 p.m.            Tran calls Nguyen a third time, and Tran's cellphone registers near Nguyen's house.

On cross-examination, Marks acknowledged not all information gathered pointed to Tran. For instance, one of Nguyen's friends told Marks she did not think Tran was capable of murder. Another friend asked to be kept informed of the investigation, which Marks found "suspicious." Further, testing of the blood samples from the front sidewalk revealed the blood was of the same person, but the person was neither Nguyen nor Tran. Marks testified had additional blood evidence found inside the house been tested, a possibility existed that those samples might have matched the samples from the sidewalk.

Marks also acknowledged officers did not follow-up on all information gathered. One example was that a search of Nguyen's computer indicated Nguyen spent "a lot of time interacting socially on the internet" and visiting many "sexually oriented" websites. Although Nguyen had a girlfriend, many friends questioned his sexual orientation. Yet, officers did not investigate Nguyen's online activity or ask that a sexual assault exam be performed following his murder. Similarly, officers did not investigate further the allegation that Nguyen was expecting a large supply of Adderall.

## II. SUFFICIENCY OF EVIDENCE

In his sole issue, Tran asserts the State failed to prove Tran was the murderer. He contends the State presented only three pieces of evidence to establish his guilt: (1) he was with Nguyen the day of the murder; (2) he did not bring the clothes he wore while with Nguyen; and (3) he initially denied taking Nguyen's iPhone, but later admitted he took it by accident. Relying on *Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013), Tran contends the circumstantial evidence the State presented against him is insufficient to support the conviction.

## A. Standard of Review

In evaluating the sufficiency of the evidence to support a conviction, an appellate court applies *Jackson v. Virginia*, 443 U.S. 307 (1979) and considers all the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Winfrey*, 393 S.W.3d at 768. Under this standard, direct and circumstantial evidence cases are treated equally, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Because the factfinder is the sole judge of the witnesses' credibility and the weight to give the evidence, the appellate court defers to the trier of fact's resolution of any conflicts in testimony, weight of the evidence, and inferences drawn. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Hooper*, 214 S.W.3d at 13 (quoting *Jackson*, 443 U.S. at 318-19).

## B. Applicable Law

The Texas Penal Code provides, in relevant part, that a person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011).

## C. Winfrey v. State

*Winfrey* is a circumstantial evidence case in which the court of criminal appeals reviewed the sufficiency of the evidence to support Megan Winfrey's conviction for the murder of Murray Burr.[2] *Winfrey*, 393 S.W.3d at 764-65, 767. Burr, who worked at the high school Winfrey attended, was found in his home with multiple stab wounds and "sharp-and blunt-force injuries." *Id.* at 764. Missing from his house were a Bible and two guns. *Id.* at 765. Although no physical evidence linked Winfrey to the murder, no evidence showed she was at Burr's house the day of

---

[2] The court also reviewed the sufficiency of the evidence to support her conviction for conspiracy to commit capital murder. *See Winfrey*, 393 S.W.3d at 773-74.

the murder, and no evidence connected her to the missing Bible and guns, two dogs "alerted" Winfrey's scent being on Burr's clothes. *Id.* at 765-66. Additionally, testimony at trial showed (1) Winfrey believed Burr had money in his home, and she wanted it; (2) Winfrey's father related to his jail cellmate specific information about the murder, including that guns had been stolen, and at the time father related the information, officers did not yet know the guns were missing from Burr's house; (3) Winfrey asked her boyfriend to take her to her ex-husband's house, allegedly to discuss their daughter, but in reality to discuss a possible alibi for the night of the murder; (4) after her ex-husband was subpoenaed, Winfrey called her ex-mother-in-law to see if her ex-husband was going to testify; (5) when she learned law enforcement personnel had found a hair at the crime scene, Winfrey shaved herself, allegedly to prevent the taking of a sample of her hair; and (6) Winfrey told her boyfriend she went to Burr's house because "it was an easy lick," which the boyfriend construed to mean Winfrey thought she would get money. *Id.* at 770-71. Reviewing this evidence in conjunction with the remaining evidence in the light most favorable to the verdict, the court found the evidence more speculative than inferential and concluded it was legally insufficient to support the conviction. *Id.* at 771-73. In reaching its conclusion, the court stated "[b]asing a finding of [Winfrey's] guilt on this [circumstantial] evidence is, at best, "mere theorizing or guessing about [her] possible guilt rather than a reasonable inference based upon evidence and facts presented." *Id.* at 772.

### D. Application of Law to Facts

We cannot agree with Tran's contention that the record reflects no more than three pieces of evidence that might support his guilt. Further, we conclude *Winfrey* is distinguishable from this case before us. Unlike the record in *Winfrey* which contained no evidence that Winfrey was seen at Burr's house the day of the murder, was found in possession of Burr's property, or moved after the murder, the record here reflects abundant evidence pointing to Tran's guilt. Not only was Tran with Nguyen the day of the murder, but he was the person last seen with Nguyen.

–8–

A neighbor of Nguyen saw Tran leaving Nguyen's house around 4:30 p.m. that day. He also admitted he was at Nguyen's house at that time. Further, Tran was found to have possession of Nguyen's iPhone minutes later. He texted and called Nguyen even though in possession of Nguyen's phone, and subsequently threw the phone in a dumpster rather than giving it to the police. Also, Tran moved out of town while the investigation was on-going. We note further, unlike *Winfrey* where the record reflected Winfrey wanted Burr's money, but not that she was in need of money, the record here reflects a motive for the murder. Tran was in debt and needed money. Tran knew Nguyen was carrying a "wad of cash," and that money was not found on Nguyen. Finally, the record reflects not only that Tran did not bring the clothes he was wearing while with Nguyen, but also that he threw away the jeans he was wearing, the "hoodie" he stated he returned to Nguyen was not located, and he gave inconsistent statements regarding the shoes.

On the record before us, we conclude the jury could have reasonably inferred Tran killed Nguyen. We must defer to the jury's decision. *See Hooper*, 214 S.W.3d at 13; *Pena v. State*, 441 S.W.3d 635, 641 (Tex. App.—Houston [1ˢᵗ Dist.] 2014, pet. ref'd) (evidence that (1) victim's death caused by strangulation rather than hanging, (2) relationship between victim and defendant was troubled, and (3) defendant's statements to law enforcement were contradicted by defendant's other statements or by officers' observations of crime scene sufficient for jury to infer defendant murdered victim); *see also, e.g., Gear v. State*, 340 S.W.3d 743, 747-48 (Tex. Crim. App. 2011) (inconsistent statements considered affirmative evidence of guilt); *Middleton v. State*, 187 S.W.3d 134, 138 (Tex. App.—Texarkana 2006, no pet.) (possession of stolen property supports inference of guilt of offense in which property stolen); *Torres v. State*, 141 S.W.3d 645, 660-61 (Tex. App.—El Paso 2004, pet. ref'd) (evidence defendant last seen with victim considered affirmative evidence of guilt). Although Marks acknowledged not all information gathered pointed to Tran and officers did not investigate every piece of information

received, the legal sufficiency standard of review requires the evidence be viewed in the light most favorable to the verdict. *See Winfrey,* 393 at 768. We decide Tran's sole issue against him.

## III. MODIFICATION OF TRIAL COURT'S JUDGMENT

Although Tran was found guilty of murder, alleged to have been committed by stabbing Nguyen with a knife or an unknown object, the trial court's judgment does not contain a deadly weapon finding. *See* TEX. PENAL CODE ANN. § 1.07(a)(17) (West Supp. 2014) (defining "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or bodily injury."). In a cross-point, the State asserts the judgment should be modified to include the finding.

An appellate court has the authority to modify an incorrect judgment to include an erroneously omitted deadly weapon finding. *Asberry v. State,* 813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1994, pet. ref'd). A verdict of murder includes a finding that a deadly weapon was used. *See Crumpton v. State,* 301 S.W.3d 663, 664 (Tex. Crim. App. 2009). Accordingly, we decide the State's cross-point in its favor and modify the portion of the judgment entitled "Findings on Deadly Weapon" to reflect "Yes, not a firearm." *See* TEX. R. APP. P. 43.2(b); *Bigley v. State,* 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *Asberry,* 813 S.W.2d at 531.

## IV. CONCLUSION

As modified, we affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131199F.U05

—10—



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

PETER PHUC HONG TRAN, Appellant

No. 05-13-01199-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court, Collin County, Texas
Trial Court Cause No. 296-81478-2012.
Opinion delivered by Justice Lang. Justices Brown and Whitehill participating.

Based on the Court's opinion of this date, we **MODIFY** the portion of the trial court's judgment entitled "<u>Findings on Deadly Weapon</u>" to reflect "Yes, not a firearm."

As **MODIFIED**, we **AFFIRM** the judgment.

Judgment entered this 12th day of August, 2015.

## ADDITIONAL FACTS IN SUPPORT OF GROUND THREE

At trial, even the State acknowledged the problem if the motive of a robbery is removed from consideration in this case. The State at trial was adament,:

> "The phone is a package deal.  The property is all kept together.  You can't separate the murder and the robbery and that's what makes this a capital murder, folks.  Peter Tran takes the proerty.  But the only way he can take the proerty is if he kills his friend. ..."

9 RR 116, 120.  Even in jury voir dire, the State emphasised that the murder and robbery had to go together and could not be separate. 5 RR 101.  In contrast, during jury voir dire, almost 30% of the defense's time was spent discussing the difference between a robbery during the course of a murder and the taking of property as an "after thought" after the murder.  5 RR 142-160.  In the end, "motive" was the centeral part of the State's case to prove Tran's identity as the killer.

Interestingly, the defense commented on the concern that the Jury's verdict rejected the motive of robbery during the sentencing arguments,:

> "This was charged as a capital murder committed in the course of a robbery.  I know by your verdict unanimously, by all 12 of you coming back with a lesser incldued offense of murder that you are not convinced that that is what occurred.  You are not convinced that there was a robbery.  You are not convinced that this was the result of debt or money, or greed..."

10 RR 31.  The State's only response to the defense's whole argument which rested on this "assumption" was to continue to rely on the State's theory of a robbery.  10 RR 36.

Moreover, during jury voir dire, in response to a question about this issue from prospective juror member Mr. Vaneerden the State explained that the Jury must follow the law and not simply find for the lesser-incldued of murder if the jury was

convenced beyond a reasonable doubt that it was committed in the course of a robbery. Specifically,:

> "I just have a general question. If the crime was committed during the act of another felony, as you defined as capital murder -- [ ] If those are the circumstances of the case, we can still convict of murder? You don't have to automatically convict of captial murder?

> DA: Well, I will answer in this way. The Jury takes an oath to render a true verdict according to the law and to the evidence. So if the State has proven guilty beyond a reasonable doubt on capital murder, then the State is entitled to and the State woueld expect that the jurors would come back with a verdict of guilty to capitøal murder.

> Now, what the jury does back in the jury room, deliberations, both sides probably are going to ask you to follow the law and your oath, and thats what it is."

5 RR 100. Then, even in the charge conference, the State acknowledged the idea that if by its verdict the Jury rejected one theory, that same thoery could not be read back into the lesser charges. 9 RR 56-60, 62. Yet, that is exactly what the COA did in this case. By their verdict Tran's Jury rejected that the murder was committed in the course of a robbery; and, yet, the COA relied upon the motive of a robbery to sustain the sufficiency of the evidence. COA Op., p. 9.





Phuc Hong Tran #1868964
s Unit
, Box 4400
ville, TX 76597

Clerk
Texas Court of Criminal Appeals
P.O. Box 12308
Austin, TX 78701